No. 18,665.

GEORGE HARRYMAN et al., Partners, etc., *Appellees*, v.
HARRY B. HARRYMAN et al., Partners, etc., *Appellants*.

SYLLABUS BY THE COURT.

1. TRADE NAME—*Agreement Not to Use Partnership Name—
Infringement—Family Name—Deception of Public—Simulation.* An agreement was made upon the dissolution of a partnership that two members of the old firm who took over part of
its business should reserve the right to trade under the firm
name of George Harryman & Bro., and that the other two
would not use that name, directly or indirectly, nor adopt a
trade name that would be deceptive or amount to a simulation
of the one so reserved; and the two last named formed a new
partnership to carry on another part of the business and
adopted the name of Harryman Bros. It is held that a finding of the district court that the trade name of the new firm
was a simulation of the former firm name should be sustained.

2. PLEADINGS—*Infringement of Trade Name—Immaterial Allegations of Answer Stricken Out.* In a clause of the dissolution agreement two of the former partners who reserved the
firm name agreed that if they could do so on terms as satisfactory as they could obtain from others, they would purchase
such Illinois broom corn as they might require from the other
two, who agreed that if they should act as agents of the two
first named in buying broom corn, they would do so for a
stipulated commission. The answer pleaded this clause and
alleged that it had been violated by the two first named, who
are plaintiffs in this action, in that they had purchased broom
corn in Illinois, but had not offered to purchase from the defendants (the other two) ; also that the plaintiffs had · purchased the commodity through other agents without giving
the defendants an opportunity to act for them. The answer
contained no allegation that the defendants had the commodity
to sell, nor of any offer to sell, or to act as agents in making
purchases, nor of readiness to do either. No injury, loss or
damage was asserted or claimed. It is held that an order
striking out the part of the answer pleading this clause is not
materially erroneous.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed November 14, 1914. Affirmed.

*Henry C. Sluss*, of Wichita, for the appellants; *A. C. Anderson*, of Charleston, Ill., of counsel.

*Kos Harris*, and *V. Harris*, both of Wichita, for the appellees.

The opinion of the court was delivered by

BENSON, J.: This is an appeal from a judgment restraining the defendants from using the firm name of Harryman Bros. after the dissolution of the previously existing firm of George Harryman & Bros., consisting of all the individual parties to this action, who are brothers.

In the year 1864 John G. Harryman, the father of these brothers, established a broom-corn business in Baltimore, Md., which he continued until his death in the year 1893, at which time the name of Harryman had become generally known to the trade in Baltimore and in Illinois where broom corn had been bought and sold. On the death of the elder Harryman, his widow and his eldest son, George, continued the business under the name of George Harryman & Company until the mother died, later in the same year, when George closed up the business. In the autumn of 1894 George resumed the business alone and in his own name. In the year 1896 William Rider Harryman, having attained full age, became a partner with George in the business under the firm name of George Harryman & Bro. In the year 1903 Frank S., the next younger brother, became a partner, and the name was changed to George Harryman & Bros. That firm established a branch house at Charleston, Ill., with William Rider in charge managing the Illinois business. The youngest brother, Harry B., who became of full age in the year 1905, was then admitted into the part-

nership without any change in the firm name.  A branch of the business was opened in Wichita in the year 1907 in the immediate charge of Frank and Harry.

The business was carried on in the three cities of Baltimore, Charleston, and Wichita by the four brothers until January, 1912.  The name of Harryman had then become generally known in the broom-corn trade in the United States.  In a few advertisements in Illinois the firm had been called Harryman Bros., and a warehouse at Charleston bore a sign with that name, but in business with customers the firm name, George Harryman & Bros., was used from the time Harry entered the partnership until its dissolution.  On January 4, 1912, the brothers entered into a written agreement providing for a dissolution, and on the 22d day of the same month a final agreement was made under which the partnership was dissolved.  This agreement provided that George and Frank should take over the Baltimore business, and William and Harry the Charleston and Wichita business.  No dispute has arisen except over the following clause :

"It is further covenanted and agreed that said George Harryman and Frank S. Harryman shall reserve the right to trade under the name of George Harryman and Bro. and the said William Rider Harryman and Harry B. Harryman covenant and agree that they will not use such trade name directly or indirectly, and that they will not adopt a trade name that will be deceptive, or amount to a simulation of, the said name of George Harryman and Bro."

The defendants in carrying on the business so taken over by them adopted and are using the name of Harryman Bros.

It appears that the new plaintiff firm opened a branch house in Wichita after the dissolution of the old partnership.  The first difficulty was over the post-office box of George Harryman & Bros. in that city.  The defendants claimed it in connection with the business they had taken over there, and a few letters addressed to the old

15—93 KAN.

firm, but intended for George Harryman & Bro., were received by them, but were immediately delivered to the firm for which they were intended.

The method of transacting business by the old and the new firms in buying broom corn was for a representative to visit the farmer and make the purchase and put the tag on the bales. The farmer then made the shipment to the purchasing firm and drew a draft for the amount, which was paid on delivery. Sales were effected by correspondence, and when shipments were made drafts were drawn against the purchaser, with bills of lading attached. The transactions in buying and selling were generally for cash. Credit was not given except in a very few instances.

Before signing the agreement for dissolution one of the defendants wrote to George asking whether the names W. R. Harryman & Bro. or Harryman Bros. would be considered a simulation of the trade name of George Harryman & Bro. To this George answered that the trade name of George Harryman & Bro. was not sold, but reserved for future use, adding:

"I do not consider the name of W. R. Harryman & Bro. an infringement on this firm name, but I do consider that the firm name of Harryman Bros. would tend to confuse matters somewhat and in order to eliminate such confusion believe that it is just as well that you adopt a name for your future business which does not conflict with the present name of George Harryman & Bro."

Soon after the dissolution each of the new firms published notices thereof. Each referred to the business it proposed to carry on. The notice of the defendant firm was signed "Harryman Bros." The letter heads of that firm bear the display head, "Harryman Bros., Broom Corn," with the names of the individual members printed in the corners above. The same printing appears upon their shipping tags. In brief, they use that name generally in their business, and claim the

right to do so. Some other minor facts appear in the abstracts but are not material to this decision.

The principal question is whether the use of the name Harryman Bros. is a violation of the contract of dissolution. While it is not shown that any considerable confusion has resulted so far, still if the contract has been broken, an injunction may be proper to prevent such a result. The parties had the right to make the contract as they desired, and its enforcement should not be denied unless it appears that no injury can result from its breach, in which case an injunction might be refused in the exercise of judicial discretion.

Many authorities are cited in the briefs upon the general subject of trade-marks and trade names, but here the parties having agreed to forego the use of the firm name and not to simulate it, the question is whether they have done so; in other words, whether the agreement has been violated. It is true that in deciding such a question regard may be had to the nature of the business formerly done and the methods pursued, but in this instance these circumstances throw but little light upon the judicial pathway. The parties evidently supposed that there was some value in the name, and that some injury would result from its use or simulation. It seems that at the beginning the defendants had misgivings on this subject, and so submitted an inquiry to their brothers, and were told that it was considered that the proposed new name of Harryman Bros. would tend to confuse, and that it would be just as well to adopt a name not in conflict with the present firm of George Harryman & Bro. It is argued by the defendants that this language is insufficient to express dissent, and that in common fairness a specific objection should have been made if there was an intention to assert that the use of the proposed name would violate the contract. On the other hand, it is argued that the language of both letters indicates a belief that confusion might result from the proposed designation,

the thing the contract was designed to avoid. It is not contended that either party is estopped by these letters. They are only indications of the construction the writers put upon the contract, which should have due consideration but are not controlling.

"The principle on which both the courts of law and of equity proceed, in granting relief and protection in cases of this sort, is very well understood. A man is not to sell his own goods under the pretense that they are the goods of another man; he can not be permitted to practice such a deception, nor to use the means which contribute to that end. He can not, therefore, be allowed to use names, marks, letters, or other *indicia* by which he may induce purchasers to believe that the goods which he is selling are the manufacture of another person." (*Perry v. Truefitt*, 6 Beavan, 66, 73, cited in 2 Story's Equity Jurisprudence, 13th ed., § 951, Note.)

The difference between a trade-mark and a trade name is emphasized in some of the authorities. The former relates chiefly to the thing sold, and the latter involves also the individuality of the maker, for protection in trade, to avoid confusion in business, and to secure the advantages of a good reputation. It is said that a trade name, therefore, has a broader scope than a trade-mark. These observations are found, in substance, in the opinion in *Armington & Sims v. Palmer*, 21 R. I. 109, 42 Atl. 308, 786. That opinion is authority for the proposition that in seeking an injunction in such cases it is not necessary to show damages nor fraudulent intent. There the name Armington & Sims Company was held to be so close to that of Armington & Sims Engine Company as to be misleading and injurious. Numerous cases are cited in the opinion where similar imitations are condemned. In a note following the report of the same case, in 79 Am. St. Rep. 786, it is said:

"Any similarity of name likely to deceive or mislead an ordinary unsuspecting customer, and divert and secure his trade from a person who has established a

Harryman v. Harryman.

trade name, is a fraud which may be restrained by injuction; *Weinstock v. Marks,* 109 Cal. 529, 42 Pac. 142, 50 Am. St. Rep. 57. See, also, *Messer v. Fadettes,* 168 Mass. 140, 46 N. E. 407, 60 Am. St. Rep. 371. Property in a trade name will be protected. The use of the words 'Mechanical Store,' is an infringement upon the trade name, 'Mechanics' Store'; Note to *Cady v. Schultz,* 19 R. I. 193, 32 Atl. 915, in 61 Am. St. Rep. 767; and an injunction will issue against the unauthorized use of another's name in the conduct of a business, though he is not alleged to have been damaged by such use: *Bagby, etc., Co. v. Rivers,* 87 Md. 400, 40 Atl. 171, 67 Am. St. Rep. 357." (p. 793.)

Where the Dodge Stationery Company had built up a large business under that name, and J. S. Dodge, a stockholder in the company, sold his stock and organized another corporation which engaged in business in the same city, it was enjoined at the suit of the old corporation from using the name "J. S. Dodge Co.," which it had adopted. (*Dodge Stationery Co. v. Dodge,* 145 Cal. 380, 78 Pac. 879.)

Another California case is illuminating. P. F. Nolan had been engaged in the retail shoe business for twenty-two years, some of the time in partnership with J. C. Nolan, a brother. This business was changed into a corporation under the name of Nolan Bros. Shoe Co. For ten years previously two other brothers had been engaged in the same city in the wholesale shoe business, but shortly before the organization of the corporation just referred to they dissolved the partnership and one of them opened a retail shoe business under the name "W. H. Nolan & Co., successors to Nolan Bros." In an action by the corporation to enjoin W. H. Nolan from using the name "Nolan Bros." findings were made that the plaintiff's predecessors had established the right to use the trade name in the retail shoe business, and that the use of the name Nolan Bros. in a rival business was an interference with that right, and an injunction was sustained. (*Nolan Brothers Shoe Co. v. Nolan,* 131 Cal. 271, 63 Pac. 480, 53 L. R. A. 384.)

Referring to the use of a family name, the court said:

"It is insisted that 'the family name of a tradesman or manufacturer can not be made a trademark so as to exclude the right to its use by another bearing the same family name.' This contention is sound to a limited extent only. If the name is used in a manner clearly indicating an intent to mislead and deceive the public, then the use of the name will be restrained by a court of equity. The first answer to appellant's contention in this regard is found in the fact that it is not a use of the family name 'Nolan,' standing alone, to which objection is made, but it is a use of the name 'Nolan Bros.,' and in a case like that at bar the principle of law invoked seems to have no application." (p. 277.)

Many other like decisions might be cited. While greater liberality may be allowed in the use of individual than corporate names, since ordinarily a person may not be restrained from using his own name, no deception being practiced, yet when he expressly covenants not to use a particular partnership designation although embracing individual names, no reason is perceived why the agreement should not be enforced; and if he also agrees not to simulate a particular name, the same rule should apply.

In *The International Silver Co. v. Rogers Corporation,* 66 N. J. Eq. 119, 57 Atl. 1037, this subject received great consideration, and many authorities were cited. A multitude of cases are cited in a note appended to the report of the same case in 2 Ann. Cas., 415. *Martell v. St. Francis Hotel Co.,* 51 Wash. 375, 98 Pac. 1116, is another important case, reported also in 16 Ann. Cas., 593, with an exhaustive note attached. (See, also, *Dyment v. Lewis,* 144 Iowa, 509, 123 N. W. 244.)

The firm of George Harryman & Bros. and the older firms which it succeeded had built up a large and lucrative trade with places of business in cities in three states, and extending into foreign lands. It was understood that the name was valuable in holding and extending trade, at least the parties, as already stated, so

Harryman v. Harryman.

considered it, and contracted on that assumption. An imitation calculated to induce customers to believe that the defendant firm was the one previously transacting the same business, which had reserved the old name, had a tendency to mislead in that respect and was a simulation prohibited by the agreement. The ordinary meaning of the term appears from standard definitions thus:

"*Simulate.* To assume the mere appearance of, without the reality; to assume the signs or indications of, falsely; to counterfeit; feign; imitate."

"*Simulation.* Act of simulating, or assuming an appearance which is feigned, or not true; counterfeiting." (Webster's New International Dictionary.)

Without pursuing further this interesting subject, which permits many illustrations and is discussed in many cases, it is held that the finding of the district court that the use of the name of Harryman Bros. was a violation of the agreement must be sustained. This conclusion seems to be well supported by the authorities, some of which are cited above.

Another question is presented. The agreement in question contained the following:

"The said George Harryman and Frank S. Harryman covenant and agree, if they can do so on terms as satisfactory as they can obtain from others, that they will purchase such Illinois broom corn as they may require, from the said William Rider Harryman and Harry B. Harryman, and the said William Rider Harryman and Harry B. Harryman agree that if they shall act as the agent of said other parties in purchasing broom corn from the producer, they will do so for a commission of $3.50 per ton, which will apply to broom corn purchased in less than carload lots, as well as larger quantities."

The answer pleaded this provision of the agreement, and alleged:

"That the plaintiffs have willfully violated said provisions of said contract in this, that they have purchased large quantities of broom corn in the State of Illinois, for use in their said business, and in making

such purchases, they have, at no time, undertaken or offered to purchase the same from the defendants on any terms whatever, and that the plaintiffs have purchased large quantities of broom corn in the State of Illinois, through agents acting for them for that purpose, paying them for making said purchase, without giving the defendants any opportunity whatever to act as agent for plaintiffs in the purchase of broom corn in the State of Illinois."

A motion was made to strike out this part of the answer and was sustained. Error is predicated upon this order. The argument of the defendants is that this action is in effect one for specific performance— to enforce a contract by injunction—and that in such cases he who seeks equity must do equity. It is said that where a party asks that one part of a contract shall be enforced against the other party he must show that he has performed other material provisions of the same contract on his part. On the other hand, the plaintiffs argue that the contract is not executory, but has been performed by the division of the business and transfer of property, leaving nothing to be done to carry it into effect except the possible future purchase of broom corn in Illinois, and that a default, if any, in that undertaking may be readily compensated in damages. It is said that the maxim that he who seeks equity must do equity, applies only where correlative equitable rights are involved.

Without determining the soundness of either position, the action of the court may be sustained for the reason that the allegations in the answer are insufficient. There are no averments that the defendants had broom corn to sell nor of any offer to sell or to purchase that commodity; nor of any offer of their services as agents to make purchases; nor any averment of their readiness to do either. Neither is it alleged that the defendants suffered, or would suffer, any loss or injury from any default or inaction of the plaintiffs under this clause. In general terms, it is averred that the plain-

tiffs violated this agreement, and the additional statement is made that they have purchased broom corn in Illinois through other agents without offering to purchase from the defendants. After examining this rather indefinite clause, we are constrained to hold that neither party can successfully charge the other with default in respect to it without alleging some offer, request or readiness to perform. No equity is shown by the averments in the defendants' answer respecting this clause of the contract that should permit them to persist in a violation of their covenant with respect to the trade name.

An inconsistency in the judgment is alleged. It restrains the defendants from using the name of Harryman Bros. in Kansas, Oklahoma, Texas, and New Mexico, but not in Maryland and Illinois. The court expressly found that the defendants had used and were using the name in the first-named states, but made no such finding concerning Maryland and Illinois. Besides, if entitled to the injunction, the defendants can not be heard to complain that it is too restricted in operation.

The judgment is affirmed.

Mr. Chief Justice JOHNSTON and Mr. Justice PORTER dissent.