## UNITED STATES v. PEPPA.

### NO. 12614–Y.

District Court, S. D. California, Central Division.

Feb. 13, 1936.

670

Peirson M. Hall, U. S. Atty., by Chas. H. Carr, Asst. U. S. Atty., both of Los Angeles, Cal., for the United States.

Harry Graham Balter, of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

Clause (1) (A), subdivision (a) of section 1693, title 26 U.S.C.A. denounces as a crime the act of "Every person who *simulates* or falsely or fraudulently *executes* or *signs* any bond, permit, entry, or other document required by the provisions of the internal revenue laws, or by any regulation made in pursuance thereof." (Italics added.)

The defendant is accused by the grand jury of the crime of simulation and execution of an Internal Revenue Order Form for narcotics. The charging part of the indictment reads: "On or about the 10th day of August, 1934, in the County of Riverside, state, division and district aforesaid, and within the jurisdiction of the United States and of this Honorable Court, (the defendant) did knowingly, wilfully, unlawfully, and feloniously, falsely and fraudulently simulate and execute a certain document required by the provisions of the Internal Revenue Laws of the United States, to-wit: a United States Internal Revenue Order Form for narcotics, by then and there knowingly, wilfully, unlawfully, feloniously, falsely and fraudulently raising the amount of morphine sulphate tablets ordered and authorized by said permit from two hundred half grain tablets to five hundred half grain morphine sulphate tablets." The defendant has demurred to the indictment upon the ground that it shows on its face that no offense has been committed.

The question presented is whether the act of raising the amount of the morphine prescription is a simulation or the signing or execution of an instrument denounced by this section. It is evident from the wording of the indictment that it was not the intention of the government to charge the defendant with the *signing* of the prescription order. The words used in the indictment are "simulate and execute."

Is the alteration of an instrument an execution or a simulation?

To execute an instrument means to make an instrument, to give it being, as it were.

When spoken of such instruments as deeds, it includes all acts such as signing, sealing, and delivering, which are necessary in order to give it effect. See Le Mesnager v. Hamilton (1894) 101 Cal. 532, 539, 35 P. 1054, 40 Am.St.Rep. 81. The "execution" of a narcotic prescription would, under the broadest interpretation of the word, mean the act of preparation and delivery of the prescription by the person authorized to do so. The defendant in this case did not perform any such acts. The prescription was prepared by a regularly authorized physician and presumably delivered to the proper person. The defendant merely raised the amount of morphine called for by it. His act cannot constitute the execution of the instrument.

Can it be said that, by his act, the defendant did "simulate" an Internal Revenue Order Form for narcotics?

Webster's New International Dictionary defines the word "simulate" as follows: "Simulate: to assume the mere appearance of without the reality; to assume the signs or indications of, falsely, to counterfeit, feign, imitate; as, to simulate insanity or loyalty; some moths simulate leaves."

In the Shorter Oxford English Dictionary, the word is defined as follows: "Simulate: to assume falsely the appearance or signs of (anything); to feign, pretend, counterfeit, imitate; to profess or suggest (anything) falsely. b. To have the external features of (1666). c. Biol. Mimic v. 5 (1876) 2. intr. To pretend or feign

(1823) 1. A government * * * in word and action simulating reform Arnold. b. If purely artificial it (a vault) doth most lively s. nature (1661)."

When called upon to interpret the word, courts have given to it a definition which corresponds with that of the lexicographers. They have taken it to mean the assumption by some one or something of an appearance which was feigned, false, deceptive, or counterfeit. See 58 Cor.Jur. 735, 736; Harryman v. Harryman (1914) 93 Kan. 223, 144 P. 262, 265, Ann.Cas. 1915B, 369.

 The act with which the defendant is charged, amounted, at most, to an alteration. And the alteration is not that of a complete instrument, but merely of a portion of it. The instrument is genuine, and executed by the proper person. As appears from the photostatic copy inserted in the indictment, all that the defendant did was to increase the amount of the prescription. This was done by writing the figure 1 over the figure 2 in the column headed "number of packages," placing a circle around the figure 2, placing a similar circle around the figure 100 in the column headed "size of package" and writing the figure 500 over the words "morphine sulph," written above the figure 100. The prescription thus changed called for one package of 500 grains instead of two packages of 100 grains each. The instrument was not simulated. And assuming that the word "simulation" can be applied at all to an act of alteration, it was no simulation of the instrument. At best, there was a simulation of a portion of the instrument. And the statute *does not* denounce any act other than the simulation of *the entire* instrument. Throughout the law of crimes, the making and altering of instruments have been considered distinct acts. Thus, for instance, in the law of forgery, it has been held that the act of making a forged instrument is entirely distinct from the act of altering an instrument already made, although each is a forgery, and is so treated in many penal statutes. See California Penal Code, §§ 470, 476; People v. Brotherton (1874) 47 Cal. 388, 401; Union Tool Co. v. Farmers' & Merchants' National Bank (1923) 192 Cal. 40, 52, 218 P. 424, 28 A.L.R. 1417. In People v. Elliott (1891) 90 Cal. 586, 27 P. 433, the defendant was prosecuted under section 470, of the Penal Code of the state of California, which, among other things, denounced as forgery the making or altering of certain documents. It appeared that the check was fictitious, issued in the name of a fictitious person. The court held that the offense was not the making of an instrument denounced by section 470, but the making and passing of a fictitious check denounced by section 476.

 Penal statutes are to be construed narrowly. In applying this principle, we are required to adopt that sense of the words which best harmonizes with the context and the end to be achieved by the legislation. See U. S. v. Lacher (1890) 134 U.S. 624, 10 S.Ct. 625, 33 L.Ed. 1080; Johnson v. Southern Pacific Co. (1904) 196 U.S. 1, 25 S.Ct. 158, 49 L.Ed. 363; Gooch v. U. S., 56 S.Ct. 395, 80 L.Ed. 418.

A study of the section under which the indictment was drawn indicates that it was the object of the Congress to punish the *simulation, execution,* or *signing* of certain instruments. Evidently it did not intend that the mere alteration of any such instrument should constitute an offense. We cannot read such intent into the words used unless we do violence to their ordinary meaning. Strength is added to this interpretation by the fact that throughout the entire federal legislation dealing with what might be called the forgery of instruments whenever changing or altering is sought to be denounced, the words "alter" or "altering" are used.

Thus we find the following acts of altering specifically denounced:

Forging, counterfeiting, *altering,* defacing, or destroying certificates, licenses, etc., of Secretary of Agriculture. 7 U.S. C.A. § 163. Forging, *altering,* or counterfeiting cotton bale tag. 7 U.S.C.A. § 714 (d). Making, forging, or counterfeiting bonds of Federal Land Banks; subsequently separately specified *altering.* 12 U.S.C.A. § 982. Making, forging, or counterfeiting notes of Federal Intermediate Bank; subsequently separately specified *altering.* 12 U.S.C.A. § 1126. Making, forging, or counterfeiting Farm Credit Board Notes; subsequently distinctly specified *altering.* 12 U.S.C.A. § 1138d. Making, forging, or counterfeiting bonds of Federal Home Loan Bank; subsequently separately specified *altering.* 12 U.S.C.A. § 1441. Make, forge, or counterfeit bonds of War Finance Corporation; subsequently separately specified *alter.* 15 U.S.C.A. § 346. Forging or *altering* bonds, bids, or public records. 18 U.S.C.A. § 72. Forg-

ing or altering Letters Patent. 18 U.S.C.A. § 71. Forging, counterfeiting, or altering deeds or powers of attorney. 18 U.S.C.A. § 73. Forging, counterfeiting, or falsely altering customs entry certificate. 18 U.S.C.A. § 119. Falsely making, forging, counterfeiting, or altering ship's or customs house papers. 18 U.S.C.A. § 129. Forging, altering, or counterfeiting military bounty land warrants. 18 U.S.C.A. § 134. Make, forge, or counterfeit certificate of citizenship. (This statute does not punish "altering.") 18 U.S.C.A. § 135. Forging, counterfeiting, or falsely altering certificates of discharge from military or naval service. 18 U.S.C.A. § 136. Making, forging, or counterfeiting government transportation request; subsequently separately specifies altering. 18 U.S.C.A. § 146. Making, forging, counterfeiting or altering obligations or securities of the United States. 18 U.S.C.A. § 262. Making, forging, or counterfeiting national bank notes; subsequently mentions altering. 18 U.S.C.A. § 263. Making, altering, forging, or counterfeiting notes of foreign banks. 18 U.S.C.A. § 272. Making, forging, or counterfeiting money orders; subsequently separately specified altering. 18 U.S.C.A. § 347. Forging, altering, or counterfeiting postage stamps. (This section leaves out the act of altering.) 18 U.S.C.A. § 348. Forging, or altering passport. 22 U.S.C.A. § 222. Altering, or forging wartime restriction permit. 22 U.S.C.A. § 223. Altering liquor stamps. 26 U.S.C.A. § 1152g. Counterfeiting or altering revenue stamps. 26 U.S.C.A. § 1282. Counterfeiting or altering adjusted service certificate. 38 U.S.C.A. § 648. Making, altering, forging, or counterfeiting instruments concerning lands in California. 43 U.S.C.A. § 1191. Forging, counterfeiting, erasing, altering, or falsifying shipping certificates, etc. 46 U.S.C.A. § 323. Altering or forging bill of lading. 49 U.S.C.A. § 121. Forging or altering navigation certificate. 49 U.S.C.A. § 181 (d). In two other federal statutes in which the word "simulate" is used, we find that it is not intended to cover "altering," for these acts denounce specifically alteration as well as simulation.

Thus it is made an offense (7 U.S.C.A. § 59) to "have in [one's] possession any simulate or counterfeit practical form or copy of any standard or part thereof" (cotton standard) or "to make, alter, tamper with, or in any respect change" any such form or copy of standard. Another statute (7 U.S.C.A. § 270) provides that "every person who shall forge, alter, counterfeit, simulate, or falsely represent, or shall without proper authority use" any license issued by the Secretary of Agriculture shall be guilty of a misdemeanor.

Thus, the ordinary meaning of the word and the meaning which may be gathered from the use which the Congress has made of it, indicate clearly that changing or altering the wording of an instrument or raising a figure in an instrument is not the act of simulation denounced by the statute. To use the terminology from the crime of forgery, the act of the defendant was not the act of "making" a forged or fictitious instrument. It was that of "altering" a genuine instrument, already made. It follows that the indictment does not state a public offense. The demurrer will therefore be sustained, and the indictment dismissed, with leave to the government to re-refer the matter to the grand jury, if so advised.