THE KANSAS MILLING COMPANY, *Appellee*, V. THE
KANSAS FLOUR MILLS COMPANY, *Appellant*.

No. 18,241.

SYLLABUS BY THE COURT.

1. TRADE NAME — *Geographical Term* — *Unfair Competition* —
*Fraudulent Intent Not Necessary*. In order for a corporation
which has built up a business under its name, which includes
a descriptive geographical term, to be entitled to enjoin a
new company from engaging in the same business in the
same locality under a name so similar that reasonably in-
telligent and careful customers will naturally be misled, it is
not necessary that an intent to defraud shall exist.

2. ———— *Similarity of Names—Test—When a Question of Law*.
Whether the name adopted by a new corporation, embodying a
descriptive geographical term, is so similar to one under
which a business has already been established as to warrant
an injunction against its use, depends upon the character
of the business and its relation to the geographical term,
but when these are determined the question becomes one of
law, turning upon the likelihood of deception resulting to
persons exercising reasonable care.

3. DEFENDANT'S CORPORATE NAME—*Not an Infringement on Plain-
tiff's Trade Name*. Although "The Kansas Milling Company,"
engaged at Wichita in the manufacture and sale of flour,
has built up under that name a business extending through-
out the Union and to foreign countries, it is not entitled to
restrain a new corporation, owning flour mills in several other
cities, from engaging in the same business, with general
offices at Wichita, under the name "The Kansas Flour Mills
Company," where no steps have been taken by the new com-
pany to increase such confusion as might naturally result
from the similarity of the names.

4. ———— *Same*. In that situation the printing by the new
company upon the sacks in which its flour is sold of its name,
followed by the words "General Offices, Wichita, Kansas,"
does not amount to an implied representation that its product
is manufactured there.

Appeal from Sedgwick district court, division No. 1.
Opinion filed June 7, 1913. Reversed.

*T. A. Noftzger, George Gardner,* both of Wichita, and *Vernon I. Day,* of Anthony, for the appellant.

*D. M. Dale, S. B. Amidon, Jean Madalene,* and *Benjamin F. Hegler,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Kansas Milling Company, a Kansas corporation organized in 1906, has since that time been engaged at Wichita in the manufacture and sale of flour, its business extending throughout the Union and to foreign countries. About January 1, 1912, another Kansas corporation was formed under the name "The Kansas Flour Mills Company," which owns and operates flour mills in seven different cities, one of them at Kansas City, Kan., the others in the southwestern part of the state, none of them being in Wichita, where its general offices are established. The first-named company brought action against the other, asking that it be restrained from conducting its business under the name adopted, upon the ground that by so doing it had engaged in unfair competition. A temporary injunction was granted, and the defendant appeals.

The court made findings of fact, the more important of which may be thus summarized: The plaintiff has at great expense built up a large trade in this and foreign countries, selling about 300,000 barrels of flour annually, and has established a reputation for the excellence of its product. It has branded and advertised its flour as manufactured by The Kansas Milling Company, of Wichita, Kansas, and thereby has made its name a valuable asset. Mail matter and telegrams intended for the plaintiff have continually been delivered to the defendant, and *vice versa.* There has also been confusion in telephone calls. The similarity of name under the circumstances is likely to give the defendant the benefit of the plaintiff's advertising and prestige, and to mislead buyers into the belief that the

product offered by the defendant is that manufactured by the plaintiff.

It is obvious that the use of names so similar, by two companies engaged in the same business, in the same city, may produce some confusion and result in some disadvantages. Whether the interference of a court is justified is a question of considerable difficulty. The ruling of the trial court is not based upon the theory that the plaintiff has acquired or can acquire an exclusive right to the use of the word "Kansas" as a part of the name of a corporation engaged in the manufacture of flour. The order granted runs only against the use of the particular title employed, in connection with a business conducted at Wichita. The defendant's right to establish its general offices in a place of its own choosing is as clear as its right to employ the word "Kansas." The statute requires the name of a corporation to begin with the word "the" and to end with the word "corporation," "company," "association," or "society," and to indicate the character of its business. (Gen. Stat. 1909, § 1701.) "Company" is the word usually employed. "Corporation" and "association" are so similar that the employment of either might not mend matters greatly. The phrase "flour mills" doubtless differs as much from "milling" as any term that could be selected to indicate the character of the business. Probably the least radical change that would satisfy the injunction would be the insertion of another word after "Kansas," such, for illustration, as "United" or "Consolidated." The amount of inconvenience that might result therefrom can not well be determined, but it can not be said that reasonable grounds of objection to such a change may not exist.

The cases bearing upon the right of one who has made use of a descriptive geographical name in his business to be protected therein upon the ground of unfair competition are fully collected in notes in

10 A. & E. Ann. Cas. 71, and 26 L. R. A., n. s., 73. (See, also, 38 Cyc. 802-805.) Obviously a right to prevent others from using in a similar manner a word which a manufacturer or dealer has given to his business or goods may be more readily acquired where the term selected is arbitrary or fanciful than where it is descriptive, especially where it embodies some geographical term having a real relation to the matter involved. Where long or extensive use has given to a geographical term a secondary significance in connection with a business, so that it has become descriptive of the goods produced or handled, the user is held to have acquired what amounts to a proprietary right to it, so that he may prevent a competitor from using it. (Note, 26 L. R. A., n. s., 77.) The plaintiff, of course, does not contend that the word "Kansas" has acquired such a secondary meaning, but on the other hand it is not seeking to prevent the use of that word by the defendant. What it complains of is the adoption of a corporate name so similar to its own that the two are likely to be confused in the minds of customers.

There seems to be a conflict of authority as to whether, in order that the use of a geographical name may be enjoined on the ground of unfair competition, an actual intention to defraud must be shown. (Note, 26 L. R. A., n. s., 77; Nims on Unfair Business Competition, §§ 25, 26.) Perhaps the decisions can be reconciled by a careful consideration of the precise facts of each case, but we do not deem it necessary to review them in detail. Doubtless in many particular instances an injunction might well be awarded or refused according to whether an intentional wrong has been done. But we do not think it should be said broadly that proof of intentional fraud is essential to the granting of such relief. While the existence of a wrongful intent might justify the interference of a court of equity upon a less showing of injury than would otherwise be required, the absence of such spe-

·cific intent ought not to stay the hand of the· court where a name is adopted so similar to that already in use by a business rival that injury to the first user will ·obviously and inevitably result.     Here the plaintiff ·does not plead that the defendant was actuated by a ·purpose to defraud, but it contends that buyers would ·naturally be deceived by the similarity in names, and that it would suffer in consequence.

The trial court concluded that "the corporate name ·of defendant is so similar to that of plaintiff as to be likely to deceive a person of ordinary intelligence in the exercise of usual care in dealing with the defendant."     The degree to which the similarity of names will naturally tend to deceive a reasonably intelligent and careful person is undoubtedly the vital question on which the controversy turns.     That question, however, is essentially one of law rather than of fact.     It can not be conclusively determined by evidence of whether confusion has or has not resulted, just as the actual conduct of individuals is not proof of what constitutes reasonable diligence.     Under the subtitle "What is similarity of corporate names," it is said in Nims on Unfair Business Competition:

"What names are 'calculated to deceive' and what names are so 'different,' or 'dissimilar,' or 'conflicting,' . as not to tend to cause confusion or deceit?     What standard can be applied to measure names, to discover whether or not they are conflicting?     The House of Lords has said that no witness is entitled to express an opinion as to this.     The names may be put in evidence, together with the facts as to their use, and the· circumstances surrounding the choosing of them; but there is no standard, except what the court in each particular case believes has worked fraud, or may work fraud or loss to the plaintiff.     The probability of injury resulting from the use of the two names is the test to be applied by the court for the purpose of deciding whether or not the name will conflict.     (§ 108.)

The decision of the case must be affected by the character of the names as well as by their degree of

resemblance. A court might readily refuse to enjoin the use of a descriptive corporate name under circumstances that would justify an injunction if the name were purely arbitrary. In either case some likelihood of confusion would have to be shown in order to obtain relief, but the probability would have to be stronger in the one case than in the other. So a distinction must be recognized between different geographical terms, according to their descriptive quality, the desirability of their use, and their connection with the subject to which they are applied. One who selects the name of a state as a part of a business designation must anticipate that more people will be moved by the same impulse, and that the resulting titles will be less readily distinguished, than if, for instance, the name of a township had been selected. Buyers of flour, at home or abroad, must be presumed to know that "Kansas" is a word likely to be used by different manufacturers, and on that account to pay closer attention than they otherwise would to the precise words of a corporate name in which it occurs. Upon these considerations this court is of the opinion that the name taken by the defendant is not sufficiently similar to that of the plaintiff to justify an injunction against its use.

If the defendant had imitated the plaintiff's brands, or taken other steps likely to increase the confusion between the two names, relief could be granted. A finding was made to the effect that the defendant intends branding and advertising the product of its various mills as "manufactured by the Kansas Flour Mills Company, Wichita, Kansas." The defendant maintains that this finding is not supported by the evidence. The plaintiff says in its brief: "It is our contention that the labeling of all of the flour of defendant in the name of Kansas Flour Mills Company, Wichita, Kansas, or the Kansas Flour Mills Company, General Offices, Wichita, Kansas, and not placing any

words upon it to indicate that it is manufactured elsewhere than at Wichita, is sufficient to sustain the finding." The defendant should not be allowed to use brands or advertisements expressly or inferentially representing that its flour is manufactured in Wichita. The sacks produced in evidence, however, show the words "Wichita, Kansas," to be preceded in each instance by the phrase "General Offices." They also bear a device giving the names of the seven cities in which the defendant's mills are situated. We do not think this employment of the name of the city in which the headquarters of the company are located is misleading.

A detailed review of the authorities is not thought to be desirable. Each case necessarily depends upon its own peculiar facts, and in several instances decisions seemingly in point are influenced by considerations not here present. In *Elgin Butter Co. v. Creamery Co.*, 155 Ill. 127, 40 N. E. 616, the court refused to enjoin a corporation called "Elgin Creamery Company" from competing at Elgin with a company having an established business under the name "The Elgin Butter Co." The facts are somewhat similar to those of the present case, but the opinion contains an intimation that the use of a corporate name similar to one already in use can only be enjoined where a fraudulent intent exists, a length to which we do not feel justified in going. In *Nebraska Loan & Trust Co. v. Nine et al.*, 27 Neb. 507, 43 N. W. 348, 20 Am. St. Rep. 686, injunction against the use by a new company of a name already employed by an older one was refused, the companies being located in different cities but operating in the same territory. *Northwestern Knitting Co. v. Garon*, 112 Minn. 321, 128 N. W. 288, is perhaps as strong a case as any cited in support of the plaintiff's contention. There the operation of the "Northwestern Knitting Mill," located at Duluth, was enjoined because of interference with the business of the "Northwestern Knitting Company," of Minneapolis.

The case seems an extreme one. The word "North-western" is so indefinite, however, that its classification as a descriptive term seems somewhat doubtful. In *Cady v. Schultz*, 19 R. I. 193, 32 Atl. 915, 29 L. R. A. 524, 61 Am. St. Rep. 763, the prior user of the words "United States" as a part of the style of a dental office was protected by injunction against their similar use by a competitor. But there the phrase was so broad that it clearly was not descriptive in any just sense. A prior decision of the Minnesota court forbade a new institution, having another and entirely different name, to describe itself in its advertising matter as "Minnesota's School of Business" in imitation of the name of an older school known as the "Minnesota School of Business." (*Rickard v. Caton College Co.*, 88 Minn. 242, 92 N. W. 958.) In the following cases in which injunctions were granted the two names involved were absolutely or practically identical: *Nesne v. Sundet*, 93 Minn. 299, 101 N. W. 490, 106 Am. St. Rep. 439; *Amer. Clay Mfg. Co. v. Amer. Clay Mfg. Co.*, 198 Pa. St. 189, 47 Atl. 936; *Philadelphia Trust, S. D. & I. Co. v. Philadelphia Trust Co.*, 123 Fed. 534.

The judgment is reversed with directions to deny the temporary injunction.