No. 42,820

AMERICAN FENCE COMPANY OF THE MIDWEST, INC., a Corporation, *Appellee,* v. RAYMOND GESTES, d/b/a ALL-AMERICAN FENCE COMPANY; W. E. CHARLES; and SOUTHWESTERN BELL TELEPHONE COMPANY, INC., a Corporation, *Appellants.*

(375 P. 2d 775)

394

Opinion filed November 3, 1962.

*Bernard V. Borst,* of Wichita, argued the cause, and *Ralph E. Gilchrist, Carl L. Buck* and *Warner Moore,* all of Wichita, were with him on the brief for the appellants.

*Kent Frizzell,* of Wichita, argued the cause, and *J. R. Hannah,* of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to enjoin and restrain the use of a word in a trade name brought by a corporate plaintiff engaged in business under the trade name of "American Fence Company" against an individual doing business as the "All-American Fence Company." The trial court entered judgment for the plaintiff and

enjoined the defendant from using the word "American" in its trade name in the area of Sedgwick County, Kansas. Appeal has been duly perfected to this court. ..

The question presented is whether on the facts in this case the trial court properly issued the injunction.

The American Fence Company of the Midwest, Inc., a corporation (plaintiff-appellee), is a foreign corporation, incorporated under the laws of Oklahoma, and authorized to conduct business in Kansas, pursuant to G. S. 1949, 17-501, *et seq*. It has been engaged in the fence business in states other than Kansas since 1950. In July, 1957, it commenced business in Kansas as a sole proprietorship and, since June 25, 1958, has been authorized to do business in this state as a corporation, engaging in the sale and installation of domestic and industrial fences. It is a subsidiary of a parent corporation with offices in Phoenix, Arizona, having ten separate corporations doing business in eight different states, all being titled under varying corporate names depending on the geographical area, such as "American Fence Company of the Southwest, Inc." or "American Fence Company of the Midwest, Inc." etc. The distinctive part of the name being used in this and other corporations is the word "American."

Raymond Gestes, the principal defendant and appellant, is an individual doing business as the "All-American Fence Company." He is a resident of Oklahoma City, Oklahoma, and began operations under his trade name in that city in 1954. He also operates under the same trade name in St. Louis, Missouri; Indianapolis, Indiana; Louisville, Kentucky; Chicago, Illinois; and Wichita, Kansas.

Mr. Gestes entered into competition with the plaintiff in January or February, 1961, in the sale and installation of fences of all kinds in the Wichita area. His agent and branch manager in Wichita is W. E. Charles, defendant-appellant. Mr. Charles negotiated for a listing and advertising space in the classified section of the Greater Wichita telephone directory to appear in the April, 1961, edition of the directory.

This action was brought in equity against Raymond Gestes, d/b/a All-American Fence Company; W. E. Charles; and Southwestern Bell Telephone Company, Inc., a corporation, to restrain and enjoin Gestes and Charles from using the word "American" in conjunction with their fence business, and the telephone com-

pany from publishing any such name in their telephone directory in the city of Wichita, Kansas, and for damages for the infringement of the plaintiff's rights and other equitable relief.

Upon joinder of issues by the pleadings, the case went to trial where the damage phase of the litigation was virtually abandoned by the parties. No cross-appeal has been taken from the failure of the trial court to award damages.

In addition to the foregoing facts the evidence established considerable confusion between the two fence companies. Telephone calls were misdirected; mail was misdirected; and on one occasion a contract was brought into the wrong office by a customer. Customers experienced considerable confusion because the word "American" was in both names. One woman testified that a brochure used by the All-American Fence Company in advertising led her to think she was dealing with the American Fence Company. The calling card was clipped over the word "All" in the brochure so it appeared that she was dealing with the American Fence Company.

The plaintiff's Wichita manager indicated that the name "American Fence Company" was substantially advertised for three years in newspapers, telephone directory, stationery and at plaintiff's business establishment, and that prior to the defendants' coming to Wichita in January, 1961, there had been no confusion with any other company in Wichita, but that subsequent to the defendants' arrival and advertising, the plaintiff had received numerous misdirected telephone calls and had encountered confusion in calling upon customers. He testified the plaintiff had experienced a business decrease in the amount of $6,000 during the three or four months after the defendant commenced competing, based on a comparable period of the past three years. The plaintiff had decreased its number of employees during this period as a result of the loss of business. Both companies, advertised in the classified section of the telephone directory, the All-American Fence Company being listed ahead of the American Fence Company.

The plaintiff's Wichita manager further testified that the term "American" was stressed in its advertising, and that it had for several years used the abbreviated form of its corporate title, "American Fence Company," to its customers and the general public, which has become generally well known and accepted. On its letterhead stationery and other literature to prospective customers,

the plaintiff, however, used its registered corporate designation, "American Fence Company of the Midwest, Inc."

The defendants, Gestes and Charles, took the position in their pleadings that the term "All-American" was a separate and distinctive term as defined in Webster's Dictionary and as understood by the public. By their evidence they attempted to show that all their advertising material, except their post card, bears a distinctive representation of a figure in a football uniform in position to throw a pass. It appears, however, that in some of the defendants' newspaper advertising copy the football player was omitted.

The appellants specify that the trial court erred (1) in overruling their demurrer to the plaintiff's evidence; (2) in finding the evidence sufficient to support the judgment; and (3) in overruling the defendants' motion for a new trial. All resolve into the ultimate question whether the trial court on the facts in this case properly issued the injunction (also specified as error).

Each case of this type necessarily depends upon its own peculiar facts. (*Milling Co. v. Flour Mills Co.*, 89 Kan. 855, 133 Pac. 542.)

In *Powell v. Valentine*, 106 Kan. 645, 189 Pac. 163, it was said "that it is the duty of a subsequent trader, coming into an established trade, not to dress up his goods or market them in such a way as to cause confusion between his goods or business and that of a prior trader." (p. 648.)

The Federal Court in *Florence Mfg. Co. v. J. C. Dowd & Co.*, 178 Fed. 73, had a case from New York in which it was sought to prevent the use of the name "Sta-Kleen" in the sale of tooth brushes as unfair competition to a company manufacturing and selling tooth brushes under the name of "Keepclean." The court said:

"We cannot resist the conclusion that the defendants take too narrow a view of the law as it relates to unfair competition. The law has a threefold object: First, to protect the honest trader in the business which fairly belongs to him; second, to punish the dishonest trader who is taking his competitor's business away by unfair means; and, third, to protect the public from deception.

. . . . . . . . . . . . .

"It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks and coverings which by no possibility can cause confusion between his goods and those of competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them. The law is not made for the protection of experts, but for the public—that vast

multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions. . . .

· · · · · · · · · · ·

[Citing cases.]

"The argument in these cases is a simple one: Where the defendant has so dressed his goods that they may be mistaken for the goods of the complainant his motive in so doing is either honest or dishonest; if honest, he should stop voluntarily; and, if dishonest, he should be compelled to stop." (pp. 75, 76.)

The considerations taken into account by a court to determine whether a trade name used in connection with a business is entitled to protection upon the ground of unfair competition are fully discussed and applied in *Milling Co. v. Flour Mills Co.,* supra. Other Kansas cases which have dealt with this subject are *Powell v. Valentine,* supra; and *Middlebrook v. Winterscheidt,* 118 Kan. 731, 236 Pac. 825.

The decision in a case of this type is affected by the character of the names as well as by their degree of resemblance. The degree to which the similarity of names will naturally tend to deceive a reasonably intelligent and careful person is undoubtedly the vital question on which the controversy turns. That question is essentially one of law rather than of fact.

The probability of injury resulting from the use of the two names is the test to be applied by the court for the purpose of deciding whether or not the names will conflict.

Where a word or term selected for a name used in connection with a business is *arbitrary or fanciful,* it is more readily entitled to protection because it acquires a secondary significance in connection with the business—that is, where by long or extensive use in the business the name has become descriptive of the goods produced or handled. In such instance the user is held to have acquired what amounts to a proprietary right to it, so that he may prevent a competitor from using it.

Similarly, where long or extensive use has been given to a geographical term and it has acquired a secondary significance in connection with a business, so that it has become descriptive of the goods produced or handled, the user is entitled to protection. (See *Northwestern Knitting Co. v. Garon,* 112 Minn. 321, 128 N. W. 288.)

But ordinarily a geographical term, which indicates the boundaries of activity or location of the business and thus has a relation to the matter involved, is merely a descriptive word or term

and does not entitle the user to protection. This was the situation in *Milling Co. v. Flour Mills Co.,* supra, where the word "Kansas" was held merely to be a geographical descriptive word and, on the facts in the case, the user was not entitled to prescriptive rights.

The selection of descriptive words having a broad general meaning (rather than fanciful or arbitrary words) in a business name do not ordinarily acquire a secondary meaning and do not entitle the user to protection. Thus, in *Milling Co. v. Flour Mills Co.,* supra, the word "milling" was purely descriptive of the business as was also the term "flour mills" used by a later rival in the same business. The court recognized that "The phrase 'flour mills' doubtless differs as much from 'milling' as any term that could be selected to *indicate the character of the business.*" (p. 857.) (Emphasis added.)

The locality in which two businesses operate is an important element in determining the rights of the parties where trade names conflict. In *Powell v. Valentine,* supra, it was recognized that if two newspapers, having identical names, do not reach the same territory and are not read in the same community, no loss results. Here, the two fence businesses operate in the same trade territory—Wichita, Kansas, and the surrounding area.

Other cases cited by the parties involving trade name rights and having a bearing on the doctrine of unfair competition are *American Automobile Ins. Co. v. American Auto Club,* 184 F. 2d 407; *Hygrade Food Products Corp. v. H. D. Lee Mercantile Co.,* 37 F. 2d 900; *Friedman v. Sealy, Incorporated,* 274 F. 2d 255; *Belvidere Co. v. Owen Park Plaza* [1960], 362 Mich. 107, 106 N. W. 2d 380; *Amer. Radio Stores, Inc., v. Amer. R. & T. Stores, Inc.,* 17 Del. Ch. 127, 150 A. 180; *Metal Craft Co. v. Metalcraft H. Corp.,* 255 Mich. 642, 239 N. W. 364; and *Automobile Assn. v. Automobile O. Assn.,* 216 Cal. 125, 13 P. 2d 707.

The appellee herein submits that it is not attempting to acquire any prescriptive rights to a purely descriptive or geographical term such as "Kansas" or "Midwest" or to the words "Fence" or "Company." It concedes a geographical term or a name merely descriptive of the business carried on, in the absence of aggravating circumstances, cannot be exclusively appropriated as against others who can and do use the name with equal truth.

The mere use of a name which competitors have a right to use does not in and of itself constitute unfair competition. This was

illustrated in *Florence Mfg. Co. v. J. C. Dowd & Co.*, supra, heretofore quoted, where "Sta-Kleen" and "Keepclean" were held to be descriptive merely and not the subject of a valid trademark, but where the business rival printed "Sta-Kleen" in the same red letters and dressed the product in a package of the same character for sale in the same trade territory as that used by the complainant, it constitutes unfair competition. (See, also, *Collegiate World Pub. Co. v. Du Pont Pub. Co.*, 14 F. 2d 158.)

The appellants contend the word "American" is a geographical designation, but insist the term "All-American" is a trade name of an arbitrary and fanciful character, because it is employed in connection with the representation of a football player which suggests general excellence, rather than a purely geographical connotation.

The term "of the Midwest, Inc." in the appellee's corporate title has a real relation to the business involved and such name could not be protected; but the word "American" on the facts in this case has no real relation to the business involved, and is, in our opinion, an arbitrary and fanciful word which has acquired a secondary meaning in connection with the appellees' fence business.

A distinction must be recognized between different geographical terms, according to their descriptive quality, the desirability of their use, and their connection with the subject to which they are applied. (*Milling Co. v. Flour Mills Co.*, supra, p. 860.) Here the word "American" is indefinite when translated in terms of the appellee's business, its location and area of activity; and its classification as a descriptive or geographical term is unwarranted. The word "American" is so broad that it is not descriptive of the business in any just sense as we view the facts in this case.

A competitor was enjoined from using the word "American" in a trade name on the facts in *Shaver v. Heller & Merz Co.* [8th C. C. A.], 108 Fed. 821; and from using the term "United States" or the letters "U. S." in a name to engage in the practice of dentistry on the facts in *Cady v. Schultz*, 19 R. I. 193, 32 A. 915.

In the instant case the chiefly significant word in each of the trade names is "American." The appellants' prefix "All" in the term "All-American" is relatively insignificant. We think the similarity of names will naturally tend to deceive a reasonably intelligent and careful person. For all practical purposes the significant words are identical.

The appellants complain that the trade name used by the ap-

pellee in connection with its business is different from its corporate name registered with the Secretary of State, and under which it is authorized to do business in the state of Kansas. They rely on *Kansas Milling Co. v. Ryan*, 152 Kan. 137, 102 P. 2d 970, and the provisions of the Kansas corporation code.

Under G. S. 1949, 17-2802, the articles of incorporation are required to set forth the corporate name of every corporation organized in the state. It must be followed by the word "Incorporated," or by the abbreviation "Inc." Foreign corporations are subject to the same provisions as domestic corporations (G. S. 1949, 17-505).

From the foregoing it is argued the appellee is not entitled to conduct its business under a trade name in addition to its corporate name and title; and, therefore, the appellee has no right to seek equitable relief because it has "unclean hands." We fail to see merit in this argument.

Nowhere in the corporation code (G. S. 1949, 17-2501, *et seq.*), or anywhere else in our statutes, can we find any requirement that a corporation should use its entire corporate name, as registered with the Secretary of State, in its advertising or in the general conduct of its business.

It is necessary for a corporation to use its full registered name on all of its conveyances, contracts and other legal matters, just as it is required to use its seal, but not so in its advertising and contact with the general public in carrying on its business. In *Kansas Milling Co. v. Ryan*, supra, the court merely holds that after a corporation has been organized and its name registered as required by law, it cannot later by an action in mandamus force the Secretary of State to grant it the right to conduct its affairs under several other names totally different from its corporate name by the amendment of its articles of incorporation *and have such other names also registered.* Nowhere does the case hold that a corporation cannot use *a contraction* of its full name in an honest manner in its advertising and ordinary business transactions, outside of legal contracts, conveyances and similar matters.

In *Kansas Milling Co. v. Ryan*, supra, the court quoted from 6 Fletcher's Cyclopedia Corporations (Perm. Ed.), p. 87, *et seq.,* § 2442, to the effect that it was well established, in the absence of statutory prohibition, that a corporation may have and be known to the public by more than one name, and that, in addition to the name given it by its charter, it may acquire other names by user

or reputation. After such quotation the court went on to say "The general corporation code [of Kansas] has no provision expressly prohibiting the use of trade names, and whether a corporation may do so is to be determined from the code generally." (p. 144.)

In the foregoing case the plaintiff wanted authorization to use six entirely different names by the inclusion of such additional names in its articles of incorporation, while in the instant case the appellee is using the trade name of "American Fence Company," which is merely a contraction of its registered corporate name, "American Fence Company of the Midwest, Inc." This is commonly done by many corporations, a fact concerning which this court may take judicial knowledge. A few of the well-known assumed or contracted forms of corporate names are: "Bell Telephone Company," "Sears," "Coleman," "G. E.," "U. S. Steel," "R. C. A.," "A. B. C.," and "N. B. C."

The evidence in this case established that the principal parties were each engaged in the sale and installation of domestic and industrial fences; that the appellee had adopted and used the trade name, "American Fence Company" long prior to the appellant; that it continued the use of such name in connection with its business for a period of years in the Wichita trade area; and that the appellants entered the Wichita trade area and began competing with the appellee in business under the trade name "All-American Fence Company" long after the appellee had established its business in this trade area.

The trial court found generally for the appellee and no request was made for specific findings of fact by the appellants. Under these circumstances a general finding made by the trial court determines every controverted question of fact in support of which evidence has been introduced and raises the presumption that all facts necessary to sustain and support the judgment have been found. (*Smith v. Smith*, 186 Kan. 728, 352 P. 2d 1036; *Commercial Savings & Loan Ass'n v. Curts*, 187 Kan. 18, 354 P. 2d 86; and *Hudson, Administrator v. Tucker*, 188 Kan. 202, 361 P. 2d 878.)

We therefore hold that the appellee by its prior adoption of the name "American Fence Company," and its continued use for a period of years, acquired trade name rights therein and is entitled to protection under the doctrine of unfair competition. The appellants' use of the name "All-American Fence Company" is likely to cause confusion in the trade, deceive the public, and substantially

prejudice the rights of the appellee who is dealing in similar products and services in the same trade area.

It cannot be said that the trial court erred in any of the particulars specified. Error is never presumed. The burden was on the appellants to make it affirmatively appear that there was reversible error in the record. (*Jocich v. Greyhound Cab Co.*, 188 Kan. 268, 362 P. 2d 27; and *Folkerts v. Kansas Power & Light Co.*, 190 Kan. 159, 372 P. 2d 997.)

The judgment of the lower court is affirmed.

WERTZ, J., dissents.