(916 P.2d 733)

No. 74,151

MANOR OF BURLINGAME, INC., *Appellant*, v. SHCC, INC.,
*Appellee.*

Opinion filed May 24, 1996.

*Jeffrey A. Wietharn* and *Richard Harmon*, of Coffman, DeFries & Nothern, A Professional Association, of Topeka, for appellant.

*Randall J. Forbes*, of Frieden, Haynes & Forbes, of Topeka, for appellee.

Before GERNON, P.J., GREEN, J., and DAVID PRAGER, Chief Justice Retired, assigned.

GREEN, J.: This appeal by Manor of Burlingame, Inc., (Manor) involves a claim of unfair competition. Manor is the owner of the "Santa Fe Trail Nursing Center," an adult care facility located in Burlingame, Kansas. SHCC, Inc., (SHCC) is the owner of "Santa Fe Trail Health Care of Topeka." This business is also an adult care facility. Manor unsuccessfully sought to enjoin SHCC from using the phrase "Santa Fe Trail" in the name of its facility. On appeal, Manor contends that the trial court erred in determining that SHCC's use of that phrase was not unfair competition. We agree and reverse the judgment of the trial court.

Manor's facility has operated continuously using the phrase "Santa Fe Trail" as part of its name since 1973. In July 1994, SHCC purchased an adult care facility known as "Samaritan Home." SHCC then changed the name of the facility to "Santa Fe Trail Health Care of Topeka."

At trial, Manor introduced evidence that it had received a great deal of correspondence in the form of misdirected mail, telephone calls, and even medically sensitive and confidential reports, x-rays, and test results. Witnesses testified that this confusion began when SHCC changed the name of its facility. Manor also presented a witness who heard a television broadcast describing Kansas Health Department violations, for which "Santa Fe Trail Health Care" was fined. The witness believed that the article referred to "Santa Fe Trail Nursing Center."

On the other hand, SHCC offered evidence from employees that no misdirected mail or correspondence intended for Manor had been delivered to its Topeka facility. Over Manor's objection, SHCC testified that to remove the term "Santa Fe Trail" from its name would be expensive and detrimental to its company.

After adopting many of Manor's findings of fact, the trial court concluded that Manor had not acquired a proprietary interest in the phrase "Santa Fe Trail" and that the phrase had not gained a secondary significance. The trial court found for SHCC and denied Manor's request for an injunction. Manor timely appeals.

The ultimate question is whether the phrase "Santa Fe Trail" had acquired a secondary meaning with respect to Manor's facility. A business name in which another has a proprietary interest or which has taken on a secondary meaning is entitled to protection under the common-law theory of unfair competition. *Harp v. Appliance Mart, Inc.*, 16 Kan. App. 2d 696, 700, 827 P.2d 1209 (1992).

Whether the phrase "Santa Fe Trail" has acquired a secondary meaning is a question of law over which this court has unlimited review. When reviewing a question of law, this court is not bound by the determination of the trial court. *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

Few Kansas cases address the common-law theory of unfair competition. One, *Milling Co. v. Flour Mills Co.*, 89 Kan. 855, 133

Pac. 542 (1913), which is cited by both parties and which the trial court relied upon in making its decision, is instructive. In *Milling*, a company operating under the name of "The Kansas Milling Company" (Milling Co.) sought to enjoin a second company, "The Kansas Flour Mills Company," from the use of the similar name. Although Milling Co. had been in business for 6 years before the second company adopted its name, the Supreme Court found against Milling Co. Evaluating the character of both names, the court reasoned that the use of the term Kansas was merely geographical, describing the location of the business as well as much of its trade area. Similarly, the court determined that the words "milling" and "flour mills" were descriptive. 89 Kan. at 857. Based upon these factors, the court found that Milling Co. was not entitled to injunctive relief.

SHCC contends that *Milling* is analogous to the instant case. SHCC argues that the term "Santa Fe Trail" is geographical, generally describing the location of the businesses, and that the terms "Nursing Center" and "Health Care Center" merely describe the services the businesses provide.

On the other hand, Manor argues that this case bears a greater factual resemblance to *American Fence Co. v. Gestes*, 190 Kan. 393, 375 P.2d 775 (1962). In *American*, two fence companies, American Fence Company and All-American Fence Company, operated in the same trade area. All-American Fence Company argued that the word "American" was a geographical designation in which American Fence Company could not claim a proprietary interest. In rejecting this argument, the court stated:

"[T]he word 'American' on the facts in this case has no real relation to the business involved, and is, in our opinion, an arbitrary and fanciful word which has acquired a secondary meaning in connection with the appellees' fence business.

"A distinction must be recognized between different geographical terms, according to their descriptive quality, the desirability of their use, and their connection with the subject to which they are applied. (*Milling Co. v. Flour Mills Co.*, supra, p. 860.) Here the word 'American' is indefinite when translated in terms of the appellee's business, its location and area of activity; and its classification as a descriptive or geographical term is unwarranted. The word 'American' is so broad that it is not descriptive of the business in any just sense as we view the facts in this case." 190 Kan. at 400.

Although SHCC argues that the term "Santa Fe Trail" is geographical, the term is not used in its geographic context. It denotes neither the location of the business, nor its market or trade area. As the court emphasized in *American*, geographic terms bearing no geographic relation to a business are arbitrary and fanciful.

The *American* court concluded that American Fence Company, by its previous adoption of the name "American Fence Company" and its continued use for a period of years, acquired trade name rights to the name entitling the business to protection under the doctrine of unfair competition. The court stated: "The appellants' use of the name 'All-American Fence Company' is likely to cause confusion in the trade, deceive the public, and substantially prejudice the rights of the appellee who is dealing in similar products and services in the same trade area." 190 Kan. at 402-03.

Similarly, in the instant case, Manor showed that it had used the phrase "Santa Fe Trail" for 20 years before SHCC adopted the phrase. Manor offered evidence that it had advertised extensively in Topeka and the surrounding area. Significantly, Manor also showed that the public had indeed become confused between the two names through evidence of misdirected mail, phone calls, and other correspondence. Manor's previous adoption of the name "Santa Fe Trail" and its continued use for a period of years entitles the company to protection under the doctrine of unfair competition.

*Secondary Meaning*

The trial court found, and SHCC argues, that Manor failed to prove that the phrase "Santa Fe Trail" had acquired a secondary meaning because Manor did not offer evidence that customers were confused by the similar names. SHCC argued, and the trial court agreed, that Manor was required to show that actual customers, who intended to choose Manor's facility, had mistakenly chosen SHCC's facility. SHCC fails to cite any Kansas cases or federal cases interpreting Kansas law requiring this type of evidence. Our research indicates that the evidence required to prove unfair competition varies considerably from one jurisdiction to another. In 2 McCarthy on Trademarks and Unfair Competition § 15.10[3] (3d

ed. 1996), the author emphasizes that secondary meaning may be proven by both direct and circumstantial evidence. The author describes the evidence traditionally accepted by the courts as follows:

"Direct evidence means the actual testimony of buyers as to their state of mind. As explained below in detail, such direct evidence may consist of either the testimony of random buyers in court or 'quasi-direct evidence' by means of consumer surveys, professionally conducted. In fact, the Ninth Circuit has gone so far as to state that: 'An expert survey of purchasers can provide the most persuasive evidence of secondary meaning.'

"The other traditional manner of proving secondary meaning is by circumstantial evidence of the seller's efforts in advertising the mark throughout a wide group of prospective buyers. Such circumstantial evidence can consist of evidence of the size of the seller, the number of actual sales made, large amounts spent in promotion and advertising, the scope of publicity given the mark, and any similar evidence showing wide exposure of the buyer class to the mark in question.

"As listed by the Seventh Circuit, courts usually consider the following factors in determining whether a term has acquired secondary meaning:

*Direct Evidence*:

a. Direct consumer testimony
b. Consumer survey

*Circumstantial Evidence*:

c. Exclusivity, length and manner of use
d. Amount and manner of advertising
e. Amount of sales and number of customers
f. Established place in the market
g. Proof of intentional copying."

Although Manor did not present survey results or other direct evidence, it presented many of the suggested forms of circumstantial evidence. In its findings of fact and conclusions of law, the trial court stated that it considered the case of *Milling* in reaching its decision. In *Milling*, the Supreme Court stated: "The degree to which the similarity of names will naturally tend to deceive a reasonably intelligent and careful person is undoubtedly the vital question on which the controversy turns. " 89 Kan at 859; see *American*, 190 Kan. at 398. In the instant case, doctors and hospitals repeatedly mailed and faxed important, and sometimes confidential, information to the wrong organization. Manor demonstrated through circumstantial evidence that it had used the phrase "Santa Fe

Trail" in connection with its nursing center for years, it had advertised extensively, and a number of people had confused the two businesses. This evidence, which was comparable to that accepted in both *Milling* and *American,* demonstrated that the phrase "Santa Fe Trail" had acquired a secondary meaning in the mind of the public.

Although the trial court considered SHCC's evidence that it would suffer financial hardship if it had to change its name, this evidence was irrelevant. In *Middlebrook v. Winterscheidt,* 118 Kan. 731, 236 Pac. 825 (1925), the trial court enjoined "The Golden Rule Mercantile Company," a newly created corporation, from using the trade name of an older competing business in another town, but the court allowed the new corporation to keep some of the signs it had already erected because they would be expensive to replace. Our Supreme Court, however, modified the judgment to prohibit *any* use of the name and reasoned that "the protection of the plaintiff from unfair competition required the discontinuance altogether by the defendants of the use of the name 'Golden Rule Store,' the name adopted by the plaintiff. The fact that the signs were expensive to replace [was] not a sufficient reason for permitting their retention . . . ." 118 Kan. at 732. The *Middlebrook* court's reasoning is applicable here. Consequently, SHCC's potential financial hardship is immaterial to whether Manor is entitled to injunctive relief or has established a common-law claim of unfair competition.

Because Kansas courts have shown diligence in protecting established businesses from unfair competition, the *American Fence* court stated:

" '[I]t is the duty of a subsequent trader, coming into an established trade, not to dress up his goods or market them in such a way as to cause confusion between his goods or business and that of a prior trader. [Citation omitted.]'

. . . .

" 'The argument in these cases is a simple one: Where the defendant has so dressed his goods that they may be mistaken for the goods of the complainant his motive in so doing is either honest or dishonest; if honest, he should stop voluntarily; and, if dishonest, he should be compelled to stop.' [Citation omitted.]" 190 Kan. at 397-98.

Manor established that the phrase "Santa Fe Trail" had acquired a secondary significance in the mind of the public with regard to its nursing center. Based upon Kansas precedent, SHCC's adoption of the phrase "Santa Fe Trail" in an identical business and the resulting confusion is sufficient to establish a common-law claim of unfair competition.

Reversed and remanded with directions to grant Manor's request for injunctive relief, enjoining SHCC from using the phrase "Santa Fe Trail" in the name of its facility.