SHEFFIELD-KING MILLING COMPANY v. SHEFFIELD MILL & ELEVATOR COMPANY.[1]

August 7, 1908.

Nos. 15,707—(194).

**Injunction—Unfair Competition—Laches.**

Action to enjoin the defendant from doing certain acts, on the ground that they constitute unfair competition in trade with the plaintiff. *Held,* that equity will not, as a general rule, refuse an injunction to enjoin unfair competition in trade, on the ground of laches, even though the delay in seeking the relief may be such as to preclude an accounting of profits.

[1] Reported in 117 N. W. 447.

**Trade-Name—Right to Use One's Own Name.**

Every person is entitled honestly to use his own name in business, either alone or associated with others in a partnership or corporation. He may not, however, use his name as an artifice to mislead the public as to the identity of the business or corporation, or the article produced, and thereby unfairly divert the business of another, who first lawfully selected the trade-name, established a business, and produced an article which is identified by the name.

**Same—Injunction.**

Such a use of one's own name, unaccompanied by a caution or explanation so specific as to prevent confusion, may be enjoined.

**Evidence.**

The findings of fact in this case are sustained by the evidence, and the facts found sustain the conclusions of law.

Action in the district court for Hennepin county to enjoin defendant from doing certain acts on the ground that they constituted unfair competition in trade. The case was tried before Holt, J., who granted an injunction. From an order denying defendant's motion for a new trial, it appealed. Affirmed.

*P. H. Gunckel,* for appellant.

As to the right to use a family name see Brown Chemical Co. v. Meyer, 139 U. S. 540; Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118; Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267; Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554.

*Paul & Paul* and *Benton & Molyneaux,* for respondent, cited Lamb v. Lamb, 120 Mich. 159; Higgins v. Higgins, 144 N. Y. 462; Holmes v. Holmes, 37 Conn. 278; Celluloid Mnfg. Co. v. Cellonite Mnfg. Co., 32 Fed. 94; Russia v. LePage, 147 Mass. 206, s. c. 5 U. S. App. 112; Kidd v. Johnson, 100 U. S. 617; Atlas v. Atlas (Iowa) 112 N. W. 232; Myers v. Kalamazoo, 54 Mich. 215; J. F. Rowley Co. v. Rowley, 154 Fed. 744; Dodge v. Dodge, 145 Cal. 380; Nolan v. Nolan, 131 Cal. 271; McFell v. McFell, 110 Ill. App. 182; Frazer v. Frazer, 121 Ill. 147.

START, C. J.

Appeal from the order of the district court of the county of Hennepin denying the defendant's motion for a new trial in an action

in equity brought for the purpose of enjoining the defendant from doing certain acts on the ground that the doing of such acts constitutes unfair competition in trade. The trial court made findings of fact to the effect following:

The plaintiff, Sheffield-King Milling Company, is a corporation duly organized on July 1, 1902, and existing under the laws of this state. The defendant, Sheffield Mill & Elevator Company, is a corporation organized April 11, 1906, and existing under the laws of this state. From 1876 to 1896 M. B. Sheffield was engaged in the business of operating a flour mill at Walcott, Minnesota, and manufacturing and selling flour, which became known throughout the United States and other countries as "Sheffield's Flour." In the year 1896 he moved such business to Faribault, this state, and in connection with his son, B. B. Sheffield, and his son-in-law, Alson Blodgett, Jr., organized under the laws of this state a corporation entitled the "Sheffield Milling Company," of which the incorporators were the board of directors. The Sheffield Milling Company acquired at Faribault, about the time of its incorporation, a large flour mill, and succeeded to and acquired all of the flour-manufacturing business of said M. B. Sheffield, together with the good will thereof, and all the flour brands, trade-marks, trade-names, and labels theretofore used by M. B. Sheffield in his business of manufacturing flour. The Sheffield Milling Company thereafter, and until 1902, continued to use and operate the plant at Faribault, and to manufacture, ship, and deliver flour thereat and therefrom, and carried on the business it had acquired from M. B. Sheffield, using the name "Sheffield's" as a part of its trade-marks, trade-names, and brands, and its flour continued to be known, bought, sold, and asked for as "Sheffield's Flour," and the name "Sheffield's" became known all over the world in the flour business. M. B. Sheffield died prior to the year 1902, and all of his interest in the stock and business of the Sheffield Milling Company became the property of his son, B. B. Sheffield, his daughter, Frances S. Blodgett, and his son-in-law, Alson Blodgett, Jr., and in the year 1902 they owned all of the stock of the Sheffield Milling Company, and constituted its board of directors.

The plaintiff corporation was incorporated on July 1, 1902, with B. Sheffield, Frances S. Blodgett, Alson Blodgett, Jr., Henry H.

King, and W. W. Allen, as its incorporators, with its principal office in Minneapolis, with a capital stock of $300,000, of which Sheffield and his associates had one-half, and King and Allen the other half. The flour mill at Faribault, and the business, good will, trade-marks, trade-names, and all other property of the Sheffield Milling Company, used in carrying on its business of manufacturing and selling flour, were duly transferred to the plaintiff, which also acquired from the Crown Milling Company a small mill at Morristown, Minnesota, known as the "Crown Mill," together with the good will, brands, trade-marks, and trade-names of the Crown Milling Company. The plaintiff continued to use the brands which it acquired from the Sheffield Milling Company, among which were "Sheffield's Best" and "Gold Mine," and its flour was generally known in the trade as "Sheffield's Flour," and has continued to be so known. A considerable portion of plaintiff's mail has always come addressed to "Sheffield Milling Company."

In February, 1906, B. B. Sheffield, Frances S. Blodgett, and Alson Blodgett, Jr., sold to King their stock in the plaintiff company and in part consideration therefor the Morristown mill was deeded to them. No part of the good will or business of the plaintiff was transferred to Sheffield and his associates, nor any of its flour brands trade-marks, or names. In February, 1906, Sheffield started in to solicit the customers and agents of plaintiff, sending circulars to them addressed "To Our Patrons," and writing and personally interviewing them, and advising them that he was about to start again in the flour-milling business. These circulars and letters were sen out in the name of "Sheffield Mill Company." In April, 1906, Shef field and his associates incorporated the defendant company. Th defendant, by its officers and agents, particularly Sheffield, has per sistently solicited plaintiff's customers to buy its flour, by represent ing to them and to the public that the defendant was the successo of the old Sheffield Milling Company, and in some instances tha the plaintiff had gone out of business, and, further, that the plair tiff's leading brand of flour, "Gold Mine," was no longer made, bi was now made by the defendant under the brand "Big Diamond. Great confusion and loss has resulted to the business of the plair tiff by the false and fraudulent representations of the defendant th;

it was the successor of and continuing the business of the original Sheffield Milling Company. The corporate name of the defendant, "Sheffield Mill & Elevator Company," is so similar to the plaintiff's name that it is liable to, has, and does create great confusion on the part of the public as to the identity of the manufacturers of the Sheffield flour, and in the business of the plaintiff. It is apparent that an effort was made by the defendant so to name itself that the business built up by the plaintiff's predecessor, the Sheffield Milling Company, might be attracted by the name "Sheffield"; that the name of the defendant was fraudulently selected by it for that purpose, and for the purpose of diverting the business of the plaintiff to itself; and, further, that the defendant has been guilty of unfair competition in business with plaintiff. No consent by plaintiff to the use by the defendant of the name of "Sheffield Mill & Elevator Company" was shown.

As a conclusion of law the trial court directed judgment for the plaintiff, enjoining the defendant and its officers and agents, as follows: "First, from using as a part of its corporate name the word 'Sheffield,' associated with the word 'mill,' or any other word indicating a business similar to that of plaintiff; second, from using as a trade-mark or trade-name for flour, or as a part thereof, the word 'Sheffield' or 'Sheffield's'; third, from representing itself to be the successor to the business of the Sheffield Milling Company; fourth, from doing any act or thing which tends to deceive or mislead the public, and cause it to believe it is dealing with plaintiff, when it is, in fact, dealing with defendant; fifth, from selling, or causing to be sold, any flour manufactured by it as 'Sheffield's flour'; sixth, from selling, or causing to be sold, any flour manufactured by it as flour manufactured by plaintiff."

1. Only two of the trial court's findings of fact are challenged by any assignment of error as not supported by the evidence. The first relates to the finding to the effect that the plaintiff did not consent to the use of the defendant's corporate name, and the other is, in substance, that such corporate name was selected and used for an unfair and fraudulent purpose. The burden was upon the defendant to show that the plaintiff consented to the adoption and use of the defendant's corporate name, and the evidence falls far short of show-

ing that the defendant was entitled, as a matter of strict right, to a finding that the plaintiff did so consent. While we are not prepared to hold that, if the trial court had found for the defendant upon this issue, the finding would be set aside as not supported by the evidence, within the rule applicable to such cases, yet we are of the opinion that the finding that the plaintiff did not so consent is sustained by the evidence, and hold that it cannot be disturbed.

The intent of the promoters, officers, and agents of the defendant in adopting and using the name "Sheffield," in connection with the business of manufacturing and marketing flour by the defendant, may be inferred from their acts and the circumstances connected with the incorporation of the defendant and the conduct of its business. It clearly appears from the evidence that the name "Sheffield," by long use, became and is a valuable trade-name, descriptive of the flour made by the plaintiff, and signifies to the commercial world a desirable grade of flour, and, further, that the right to use the name in such connection was sold to the plaintiff by the promoters of the defendant. Upon the evidence in this case, much of which is not disputed, it seems difficult to explain the acts and conduct of the defendant's officers and agents, except upon the theory that they intended the necessary consequences thereof, which were unfairly to deprive the plaintiff of that which it had honestly acquired and paid a fair consideration therefor. A consideration of the evidence, as set out in the record herein, has led us to the conclusion that the finding of the trial court that the defendant's corporate name was fraudulently selected and used for the purpose of diverting the business of the plaintiff to the defendant is sustained by the evidence.

2. The defendant also claims that the trial court erred in not holding that the plaintiff had lost, by its laches, its right to complain of the use by the defendant, in its corporate name, of the name "Sheffield," in connection with the word "mill." Laches is a defense peculiar to a court of equity, the practice of which is to deny affirmative relief to a party who applies therefor after unreasonable delay. What will constitute unreasonable delay depends upon the facts of each particular case. In equity actions for relief against infringement of trade-marks or unfair competition in trade, greater diligence is required in bringing the action where an accounting for profits is

sought than is required where an injunction is prayed against future infringements or acts of unfair competition. In the latter case equity will not, as a general rule, refuse the injunction on account of delay in seeking the relief, even though the delay may be such as to preclude an accounting of profits. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526; Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19–39, 21 Sup. Ct. 7, 45 L. Ed. 60.

The evidence in this case, taking the most favorable view of it for the defendant, is sufficient to justify a finding to the effect that the plaintiff knew the use the defendant was making of the name "Sheffield," in its corporate name and otherwise, for approximately one year before the commencement of this action; that the plaintiff made no request of the defendant to cease using such name, nor make any effort to prevent it, except to file a complaint against the defendant with the Chamber of Commerce of Minneapolis; and, further, that the defendant knew that such use of the name was objectionable to the plaintiff. This evidence justified the omission of the trial court to direct an accounting of profits. It is, however, obvious that the evidence, when tested by the rule stated, is insufficient to justify a refusal of relief to the plaintiff by way of an injunction. We therefore hold that the court did not err in holding that the plaintiff had not lost its right to the relief granted by reason of its laches.

3. The last contention of the defendant to be considered is that the facts found by the trial court do not justify the conclusion of law to the effect that an injunction issue enjoining the defendant "from using, as a part of its corporate name, the word 'Sheffield' associated with the word 'mill,' or any other word indicating a business similar to that of plaintiff." It is to be noted that the defendant in the court below made a motion to strike out this conclusion, but it did not ask to have the conclusion so amended as to allow the use of the word by the defendant in such modified way as not to deceive the public or be unfair to the plaintiff. Nor was there in the court below, nor is there here, any suggestion that it is practicable to so modify the finding, by providing that an "explanation must accompany the use (of the name) so as to give the antidote with

105 M.—21

the bane." Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350; Rowley v. J. F. Rowley Co. (C. C. A.) , 161 Fed. 94.

In the last case cited the decision of the lower court was reversed, on the ground that it was error to restrain the defendant from using his own name, in any manner whatsoever, in the manufacture and sale of artificial limbs, instead of "allowing the use, provided that an explanation is attached." It may be fairly assumed in the case cited that the required modification was practicable and would prove effectual.

If, in the case at bar, it be impracticable to make any modification of the defendant's corporate name, and it be necessary, for the plaintiff's protection from the unfair competition shown by the court's findings of fact, to restrain the defendant from using the word "Sheffield" as a part of its corporate name, in connection with the word "mill," then it is a condition intentionally created by the defendant, and the consequences thereof, equitably, should fall upon it, and not upon the plaintiff. It is, however, urged on behalf of the defendant that an injunction in accordance with the other five conclusions of law will give to the plaintiff all needful protection; hence the retention of the first is not necessary. Upon a consideration of all the facts found by the trial court, we are of the opinion that an injunction restraining the use of the word "Sheffield," in the manner indicated in the first conclusion of law, is reasonably necessary for the protection of the plaintiff.

This brings us to the ultimate question as to whether the facts found sustain the court's first conclusion of law. How far the right to the use of a family name in business may be enjoined is a question which has been frequently passed upon by the courts. The trend of the later cases is to extend the limitation upon the right whenever it is necessary to do justice and prevent unfair competition in trade. Upon principle and authority we hold that every person is entitled honestly to use his own name in business either alone or associated with others in a partnership or corporation. He may not, however, use his name as an artifice to mislead the public as to the identity of the business or corporation, or the article produced, and thereby unfairly divert the business of another person, partnership, or cor-

poration, who first lawfully selected the trade-name, established a business, and produced an article which is identified by the name. Such a use of one's own name, unaccompanied by a caution or explanation so specific as to prevent any confusion as to the identity of the corporation or its product, may be enjoined. Hopkins, Trade-Marks (2d Ed.) 145; 28 Am. & Eng. Enc. (2d Ed.) 426; Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247; Higgins v. Higgins, 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. 769; Lamb v. Lamb, 120 Mich. 159, 78 N. W. 1072, 44 L. R. A. 841.

The findings of fact clearly bring the case at bar within the rule stated, and we hold that all the conclusions of law are sustained by the findings.

Order affirmed.