No. 47,109

C. C. Brooker, C. M. Brooker and Brooker Sales, Inc., a Corporation, *Appellants,* v. Paul K. Brooker and Paul Brooker Sales International, Inc., a Corporation, *Appellees.*

(519 P. 2d 612)

Opinion filed March 2, 1974.

*Jim Lawing,* of Jim Lawing, Chartered, of Wichita, argued the cause and was on the brief for the appellants.

*Eugene G. Coombs,* of Coombs and Brick, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Kaul, J.: Plaintiffs brought this action seeking an injunction to

restrain defendants from claiming the defendant corporation is the original Brooker Sales Company.

In response to plaintiffs' petition, defendants filed an answer and cross-petition alleging the existence of an agreement between the parties executed in the form of the corporate minutes of the two corporations, wherein each corporation, authorized the other to use copyrights, sale programs, and all written and printed materials pertaining to the advertising and promotion of the original Brooker Sales Company.

The case was tried to the court without a jury. The trial court found the agreement was made essentially as alleged by defendants. Thus, although the action was filed in injunction, it became, in essence, one in contract and, although the question of unfair competition was considered, the case actually revolved around the trial court's interpretation of the agreement.

The trial court, in construing the agreement, found that neither party had the right to claim to be the original company and that for either to do so would be an unfair trade practice. Based on its construction of the agreement, the trial court enjoined both parties from claiming to be the original company. It is only this point of the order from which plaintiffs appeal, asserting that the trial court's conclusions of law on this single point are inconsistent with its findings of fact. All of plaintiffs' assertions on appeal resolve into the ultimate question whether the trial court erred in restraining plaintiffs from claiming to be the original Brooker Sales Company.

The growth and financial success of the Brooker business, which consisted generally of promoting inventory reduction and liquidation sales for retail businesses stemmed from the industry and business acumen of C. C. Brooker, father of Paul and C. M. Brooker. In 1906 C. C. Brooker began conducting sales promotions for retail stores on a part-time basis; in 1916 he devoted full-time to the business, operating as Brooker Sales Company in Marion. In 1921 C. C. was joined by his brother Robert and the business was operated as Brooker Brothers. In 1921 a brother-in-law, Willard King, joined the firm and an Oklahoma branch was established, operating as Brooker-King Sales Company in Oklahoma City. In the meantime, Paul Brooker first became connected with the business working part-time during the years 1928-1929 while a student at Kansas University and full-time after 1929.

The business suffered from the impact of the depression in 1933. Brother Robert and brother-in-law King left the business, as did

son Paul who became employed by Dun & Bradstreet Company in Chicago. C. C. Brooker was again alone in the business. In 1941 C. M. Brooker helped his father conduct a few sales. In late 1941 the business was suspended because of World War II. In 1947 the business was reestablished and operated under the names Brooker Sales Service and Brooker Sales interchangeably.

In 1949 the business was incorporated as Brooker Sales, Inc., with C. C. Brooker and his two sons, C. M. and Paul, as incorporators. C. C. and C. M. devoted full-time and Paul worked part-time while he was still with Dun & Bradstreet until 1951 when Paul also devoted full-time to the business. In 1952 Paul purchased a full one-third interest in the corporation.

In May 1953 Brooker Sales Serice, Inc. was incorporated and chartered in the State of Illinois. C. C., C. M. and Paul Brooker each owned one-third of the capital stock and were named as the incorporators. The purpose of the creation of Brooker Sales Service, Inc. was to be able to apportion profits between two corporations and, thus avoid, corporate surtax then in effect on profits exceeding $25,000.00. The business of both corporations was carried on essentially as one business from the same office in Wichita.

By 1961 serious conflicts had developed between the two sons and it was decided to separate the two companies with the father retaining his one-third stock in each company. This was accomplished by action of the respective boards of directors, as reflected in the minutes of each corporation.

The trial court's findings of fact with respect to the separation agreement and the following events which led to this litigation are as follows:

"10. June 13, 1961, due to serious conflicts between Paul K. Brooker and C. M. Brooker, Paul K. Brooker obtained two-thirds (⅔) stock in Brooker Sales Service, Inc., and C. M. Brooker obtained two-thirds (⅔) stock in Brooker Sales, Inc. C. C. Brooker retained one-third (⅓) interest in each company. An Agreement was made whereby both companies are authorized to use all 'copyrights, materials, sales programs, signs, banners, letters of recommendation, mats and all written and printed materials' of both companies which had been previously copyrighted, used or prepared. This Agreement was prepared by Mr. Eugene Coombs, attorney for the defendants.

"11. In 1961, both companies began operating in accordance with the Agreement of June 13, 1961, with both using the 'copyrights, materials, sales programs, signs, banners, letters of recommendation, mats and all written and printed materials.' Neither company used the word 'ORIGINAL' in their advertising or on their letterheads, but both companies competed vigorously with each other.

"12. 1962, Brooker Sales, Inc., started using 'original' in advertising and has continued using 'original' until enjoined from doing so in this case. Jerry Crowley began working full time for Brooker Sales Service, Inc. Brooker Sales Service, Inc.'s attorney protested to C. M. Brooker and Brooker Sales, Inc.'s attorney regarding their use of 'original' and calling Brooker Sales Service, Inc. a 'newly formed organization.'

"13. 1964, C. C. Brooker sold his one-third (⅓) interest in Brooker Sales Service, Inc. and worked exclusively for Brooker Sales, Inc.

"14. 1970, Brooker Sales Service, Inc., now Paul Brooker Sales International, Inc., began using 'original Brooker.' "

Based on the findings recited, the trial court entered conclusions of law in pertinent part as follows:

"1. The intent of the Agreement of June 13, 1961, was that both plaintiff and defendant companies would be on an equal basis with both having full use of all letters of recommendation, copyrighted materials, banners and other items formerly used by either company, or both of them.

"2. It is contrary to the Agreement of June 13, 1961, for either plaintiff or defendant company to claim to be the 'original' and also for either party to do so in an unfair trade practice which should be and is hereby enjoined.

"3. C. C. Brooker is the founder of both plaintiff and defendant companies, and both plaintiff and defendant companies have advertised this fact and either or both are free to continue to do so as long as it is done fairly and in good taste.

"4. Plaintiffs and defendants are enjoined and restrained from making false or misleading statements about the other, and from otherwise carrying on unfair trade practices designed to injure the other.

"5. The Court will look with disfavor on any of the parties using statements or findings of the Court, allegations or statements in pleadings or any proceedings in this case in any advertising.

"6. As a further conclusion of law, the parties are prohibited from in any way saying that any action performed prior to the division of the companies is exclusive with either company."

Judgment was entered enjoining actions of the parties in accordance with the conclusions of law.

Counsel for the parties are to be commended for working out a stipulation agreement for the record on appeal in which they agree the trial court's findings of fact are true and correct and that the corporate minutes are valid in all respects. The parties further stipulated that the name of Brooker Sales Service, Inc. was changed on September 24, 1964, to Paul Brooker Sales, Inc., and later to Paul Brooker Sales International, Inc. The efforts of counsel in stipulating for the record has lightened our load on appellate review and undoubtedly lessened the cost of this appeal.

In their brief on appeal plaintiffs contend the trial court's judg-

ment that plaintiffs be enjoined from claiming to be the original Brooker firm is contrary to the results dictated by the findings of fact and the result creates confusion in the market place and prevents plaintiffs from advertising the correct history of their firm. In their argument on this point plaintiffs attempt to relate this action to one brougth for injunctive relief against unfair competition.

Plaintiffs cite a number of cases from other jurisdictions dealing with unfair competition or trade practices with respect to the use of a title or name usually the surname of the founder of a business. For example in *Florence Mfg. Co. v. J. C. Dowd & Co.*, 178 Fed. 73 (2nd Cir. 1910) it was held that a competitor should be restrained from offering for sale an article, packaged, styled and dressed in such manner as to deceive purchasers into believing they were buying goods of the complainant's manufacture.

*Sheffield-King Milling Co. v. Sheffield Mill & Elec. Co.*, 105 Minn. 315, 117 N. W. 447, was an unfair competition-injunction action involving the use of a family name. The case stands for the proposition that any person is entitled to use his own name, as a trade name in business either alone or associated with others in a partnership or corporation. He may not, however, use his name as an artifice to mislead the public as to the identity of the business and thereby unfairly divert the business of another, who first selected the trade name, established a business, and produced an article which is identified by name.

Likewise, in *Donnell v. Herring-Hall-Marvin Safe Co.*, 208 U. S. 267, 52 L. Ed. 481, 28 S. Ct. 288, it was held that a stockholder and officer of a corporation leaving his family name, after that corporation sold its good will, trade name, etc., does not lose his right to carry on a similar business under his own name. However, he may be enjoined by the purchaser of the original corporation from using any name or advertising indicating that he is the successor of the original corporation or that his goods are the product of that corporation.

Plaintiffs emphasize the case of *Friend v. H. A. Friend and Company*, 416 F. 2d 526 (9th Cir.) because they say it bears a striking resemblance factually to the instant case. H. A. Friend established H. A. Friend & Co., Inc., a wholesale paper products business, in Illinois, ownership passed to members of the Friend family. Wilber Friend, a son of the founder, had a falling-out with other members of the family, sold his interest in the business, and moved to Cali-

fornia. Wilber established a paper products business similar to the original business and began operating under the name of Friend & Company. In an injunction suit Wilber was found by the trial court to have vigorously and fraudulently exploited the similarity of names. The injunction granted by the trial court restraining Wilber from using the name "Friend" unless preceded by the word "Wilber" was upheld by the court of appeals. The *Friend* case is analogous to that at bar only in that it also involved a family business and the use of a family name. In *Friend* son Wilber sold out and gave up all of his interest in the family business and proceeded to start up a competing business of his own. In the instant case the two firms existed long before the agreement to split-up the business. The father agreed to and did—for a time—participate on an equal basis in the operation of both companies. In *Friend*, Wilber was restrained from using the surname unless preceded by his given name. In the instant case Paul's given name has been a part of the business name of defendant corporation since 1964.

Other cases cited by plaintiffs involve either a prior established trade name or trademark coupled with a subsequent pirating of such name or trademark; or the unauthorized claim to succession or some other deceptive, misleading or fraudulent use of a previously established trade name. Injunctive relief was granted to prevent the continuation of these unfair practices.

In general the cases cited by plaintiffs follow the established rules that every person has a right to use his own name for business purposes, but such right is subject to restriction where the name has a secondary meaning, or where the name is used for the fraudulent purpose of deceiving and confusing the public and injuring a competitor. A person may not use his own name for the express purpose of appropriating the business or good will of a competitor, or resort to any artifice or contrivance in the use of his own name for the purpose of misleading the public as to the identity of his business or goods produced. (52 Am. Jur., Trademarks, Tradenames, Etc., § 133, pp. 608, 609; 44 A. L. R. 2d, Anno., p. 1156.) The limited number of Kansas decisions dealing with or touching upon the subject adhere to the foregoing principles. (See *Powell v. Valentine*, 106 Kan. 645, 189 Pac. 163; *Milling Co. v. Flour Mills Co.*, 89 Kan. 855, 133 Pac. 542; and *Mill Co. v. Kramer*, 82 Kan. 679, 109 Pac. 692.) Decisions from this and other jurisdictions are considered in *American Fence Co. v. Gestes*, 190 Kan. 393, 375 P. 2d 775, wherein the "American Fence Company" by its prior adoption of the name

and continued use thereof for many years was held to have original trade name rights and entitled to protection under the doctrine of unfair competition as against a new competitor using the name "All American Fence Company."

An examination of the cases cited by plaintiffs reveals that in each case discussed, an absolute transfer of the business including good will and trade names had taken place; the seller subsequently attempted to start a business similar to that which he had sold and was either enjoined from the use of trade names which he had sold or restricted to the extent that explanations differentiating between the products or literature of the business, which ever the case might be, must be printed on the product or literature of the business.

None of the cases cited by plaintiffs deals with a situation where the continued use of various businesses identifying indicia is controlled by an agreement between the parties as in the instant case. In conclusion of law No. 1 the trial court determined that it was the intent of the agreement that both companies were to be on an equal basis with both having full use of all advertising and copyrighted materials formerly used by either party. Conclusion No. 1 is not challenged by plaintiffs and is fully supported by the evidence and the trial court's findings of fact. Plaintiffs center their attack on conclusion No. 2 on the ground that the trial court's determination that it was contrary to the agreement for either party to claim to be the original company is inconsistent with the results dictated by the findings of fact.

In its findings of fact the trial court traced the Brooker business from its origin by the father. The two sons were incorporators in the first corporation and, likewise, in the second. When the business was separated by the 1961 agreement each son was placed on an equal basis in the two corporations with equal rights to the business. The father agreed to devote his time on an equal fifty percent basis between the two corporations. This business history, coupled with the express provisions of the 1961 agreement, led to the trial court's conclusion that the parties intended that both corporations have the right to equal use of any business identification pertaining to the original business or its origin. We think it only natural that the trial court would follow with the conclusion that to grant either the exclusive right to claim it was the "original" would be contrary to the agreement. On the other hand, the trial

court in conclusion No. 3 granted both the right to advertise the fact that C. C. Brooker was the founder of both companies which, in fact, he was.

The rights of parties to the use of a trademark or trade name involved in a transaction may be governed or restricted by contracts. (52 Am. Jur., Trademarks, Tradenames, Etc., § 38, p. 530.) Where there is an absolute transfer of a trademark or trade name, the transferee ordinarily succeeds to all the rights of the transferor with respect to the use thereof. Here, however, there was no absolute transfer, but rather a division of assets coupled with the express retention by both corporations of the right to use all copyrighted materials, etc.

It is true that in granting equal use of the various materials the term "original" was not specifically enumerated in the 1961 agreement. However, since the undisputed intent of the agreement was to place both on an equal basis the extentions of the right to one and exclusion of the other to such use would certainly be contrary to such intent. Had the parties intended that one or the other of the corporations would have the sole right to claim itself as the original Brooker company, it could have easily been included in the agreement.

Since the intent of the agreement was to put the parties on an equal basis, either corporation was entitled to claim to be the "original" or neither was entitled to do so. The latter is obviously the sensible conclusion, since to allow both corporations the right to claim to be the "original" would certainly create confusion among the public. The law favors a construction which will make a contract valid rather than invalid unless that construction is required by the terms of the agreement in the light of surrounding circumstances (17 Am. Jur. 2d, Contracts, § 254, pp. 647-648). The findings of fact support the trial court's construction of the agreement and the construction reached does not provide for an illegal result.

Finally, plaintiffs contend that the doctrine of laches should be invoked: first, to prevent defendants from complaining of the use of the term "original" and, second, that laches should bar defendants' counterclaim for an injunction. Neither contention has merit. In finding of fact No. 12, which is not challenged by plaintiffs, the trial court found that defendants promptly protested the plaintiffs' use of the term. Moreover, as defendants point out, plaintiffs failed to raise laches in their pleadings. Laches is an affirmative

defense and must be pleaded (K. S. A. 60-208 [c]; Gard Kansas Code of Civil Procedure [1973 Cumulative Supp.], § 60-208 [c]); since plaintiffs failed to raise it in their answer to defendants' counterclaim or during the trial they are precluded from raising it for the first time on appeal.

The record discloses no error—the judgment is affirmed.