In re KEY TRUCK LEASING, INC., Bankrupt.

TRANSPORT ACCEPTANCE CORPORATION, Plaintiff,

v.

Robert A. FOTHERGILL, Trustee, Defendant.

Bankruptcy No. 78–20933–H.

United States Bankruptcy Court, D. Kansas.

March 18, 1981.

F. Stannard Lentz, Hamill, Lentz, Neill & Dwyer, Shawnee Mission, Kan., for plaintiff.

Robert A. Fothergill, Kansas City, Kan., Trustee.

James Yates, Kansas City, Kan., for Trustee.

R. Pete Smith, Kansas City, Kan., for bankrupt.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

Plaintiff, Transport Acceptance Corporation, filed its Complaint for Reclamation of Property on February 21, 1980, naming Robert A. Fothergill, the trustee for debtor, Key Truck Leasing, Inc., as defendant.

At the pretrial conference on April 16, 1980, the parties agreed to present the case on stipulated facts. The stipulation was filed and both parties have submitted briefs. Transport Acceptance Corporation was represented by F. Stannard Lentz, of the firm of Hamill, Lentz, Neill & Dwyer. Robert A. Fothergill, the trustee, was represented by James Yates.

## FINDINGS OF FACT

1. On April 9, 1978, the debtor entered into a retail installment contract for the purchase of seven tractors. Only four tractors remain the subject of this reclamation complaint, and they are described as follows:

| 1974 | Freightliner | Tractor |
|---|---|---|
| CA213HM099967 | | |
| 1976 | Freightliner | Tractor |
| CA213HL116070 | | |
| 1976 | Freightliner | Tractor |
| CA213HP120930 | | |
| 1977 | Freightliner | Tractor |
| CA213HL131854 | | |

2. According to the terms of the contract, the buyer granted a security interest in all of the tractors to seller.

3. In the body of the contract, the debtor is listed as the buyer. In a space providing for the seller's name, however, no name is listed. No seller is identified anywhere in the body of the contract document.

4. At the end of the contract document is the name "Heart of Illinois Truck Center DBA Lloyd Schumacher Chevrolet-Buick, Inc." (hereinafter referred to as "Heart"). Underneath this is the word *"By"* and the signed name of James R. Steider, with the title of *"VP"* listed. To the right of the above, debtor is again identified as the buyer. Below the debtor's name is the word *"By"* and the signed name of Lloyd Schumacher, with the title of *"Pres"* listed.

5. The back page of the contract document purports to be an assignment of all of Heart's interest in the instrument, and the property described therein, to the plaintiff. The assignment is dated April 9, 1978, the same date as the contract. The signed name of James R. Steider, *"VP"*, appears on behalf of Heart.

6. According to documents filed in connection with debtor's bankruptcy, Lloyd Schumacher was the president of debtor, and James Steider was the vice president and secretary of debtor.

7. From the above, it can be concluded that James Steider was the vice president of both Heart and the debtor, and that he signed the contract and assignment in question as the vice president of Heart.

8. The debtor filed its voluntary petition in bankruptcy on December 14, 1978. The debtor was authorized by this Court to continue operating its business.

9. On May 16, 1979, debtor and plaintiff entered into a "Security Agreement Modification". The agreement provided that debtor's unpaid balance on the contract, $150,468.12, would be paid off in 25 monthly installments. In consideration for the agreement, debtor granted to plaintiff a security interest in the tractors.

10. Debtor was adjudicated a bankrupt on October 29, 1979, and the defendant, Robert A. Fothergill, was subsequently appointed as the debtor's trustee.

11. As stipulated by the parties, there is no equity in the four vehicles for the benefit of the debtor's estate over and above plaintiff's claim.

12. As stipulated by the parties, the plaintiff's security interest in the vehicles, if valid, has been perfected by a notation of plaintiff's lien on all four certificates of title.

## ISSUE INVOLVED

WHETHER OR NOT THE SELLER WAS SUFFICIENTLY IDENTIFIED IN THE APRIL 9, 1978, CONTRACT FOR IT TO CREATE A PERFECTED LIEN UPON THE PROPERTY AS AGAINST THE TRUSTEE.

## CONCLUSIONS OF LAW

Section 70(c) of the Bankruptcy Act (11 U.S.C.A. § 110(c) states in pertinent part as follows:

"... *The trustee shall have as of the date of bankruptcy the rights and powers of: ... (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists* ...."

The defendant-trustee contends that the contract did not create a lien as against him upon the four tractors in question because the seller was not identified in the body of the agreement. Thus, trustee argues that

his status as a lien creditor allows him to retain the tractors for the benefit of the debtor's estate.

Initially, it must be determined whether the security agreement was valid between the parties to the contract, where Heart's representative signed the contract, but where Heart was not named in the body of the contract.

The law of Kansas, the contract law controlling here, is silent on this point. The decisions from other jurisdictions are fairly evenly split—some courts deciding that an unnamed person who signed the contract is a party thereto; other courts deciding that he is not bound. Although there is no general rule, there are particular circumstances that the courts consider in deciding the question.

The most important single factor looked at is whether the contract distinctly designates others as parties. 94 A.L.R.2d *Parties to Contract* § 5; 17 Am.Jur.2d *Contracts* § 295. Here, there are no parties designated in the body of the contract other than the debtor. A second factor looked at is whether the omission of the name from the body of the contract was unintentional. Plaintiff has pointed to no evidence showing that Heart's name was unintentionally omitted from the contract. However, the contract document itself reveals that the contract was assigned April 9, 1978, the date of the contract. This suggests that the contract may have been prepared and assigned hurriedly, with unintended errors resulting.

■ Thirdly, courts look at whether the person signed the contract with an intention of being a party thereto. 17 Am.Jur.2d *Contracts* § 295. In *Stoutz v. Wilson Motor Co.*, 176 Okl. 316, 55 P.2d 990 (1936), intention was the primary criterion looked at by the Oklahoma Supreme Court:

" . . . *A person who has signed his name to a contract becomes bound as a party thereto, even though he is not elsewhere mentioned therein, subject to the condition, however, that the intention that he is to be so bound be apparent from the contract after the application of the accepted rules of construction . . .*"

Here, there is no doubt that Heart intended itself to be a party to the contract. The contract refers to seven tractors which Heart in fact transferred to the debtor. Thus, Heart's intention to be a party is shown by its completion of the seller's obligations under the contract. Further, there is no reason for the signature of Heart's representative on the contract other than that Heart intended to be a party to the contract. Where a document is unambiguous and explicit, and it is impossible to ascribe any other significance to a signature, the signer is considered to be a party to the transaction. *Gill v. General Electric Co.*, 129 F. 349 (3d Cir. 1904).

The Kansas Supreme Court has upheld the view that the law favors a construction which will make a contract valid rather than invalid, unless that construction is required by the terms of the agreement in the light of surrounding circumstances. *Brooker v. Brooker*, 214 Kan. 89, 519 P.2d 612 (1974).

■ In light of the authorities and principles stated above, it is clear that the contract was valid between Heart and the debtor and that Heart was the seller in the security agreement in question.

The trustee's position is that even if the contract is valid between the parties who signed it, it is invalid as to the trustee in his status as a lien creditor, because the security agreement did not give him notice of the seller's identity.

■ Since the contract constituted a security agreement, it was effective according to its terms between the parties and against creditors. K.S.A. 84–9–201. The official U.C.C. Comment to K.S.A. 84–9–201 points out that—

" . . . *In general the security agreement is effective between the parties; it is likewise effective against third parties.*"

The security agreement having been attached pursuant to K.S.A. 84–9–203, only the steps required for perfection remained. K.S.A. 84–9–303. The parties have stipu-

lated that the plaintiff, to whom Heart had assigned all its rights in the contract, has perfected its "alleged" security interest in the vehicles by a notation of plaintiff's lien on all certificates of title.

 It has been recognized that the Kansas U.C.C. provides for a "notice" system of filing. *In re McCoy*, 330 F.Supp. 533 (D.C.Kan.1971). K.S.A. 84–9–402 states the formal requisites of a financing statement. The U.C.C. Comment to K.S.A. 84–9–402 states the purpose of "notice filing":

> "*2. This section adopts the system of 'notice filing' which proved successful under the Uniform Trust Receipts Act. What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. <u>Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.</u>*" (emphasis added)

The above is applicable to the perfection of a security interest by notation of the secured party's lien on a certificate of title, since such perfection has the same effect as perfection by filing of a financing statement. K.S.A. 84–9–302(3).

 Thus, it is recognized that a third party creditor is deemed to have notice of a lien that is noted on the certificate of title, and it is contemplated that the creditor will inquire of the parties to determine the full nature of the lien. This is all the notice that a third party creditor is entitled to.

 Since the terms of the security agreement were effective between the parties, they were effective as to the trustee in his status as a lien creditor. K.S.A. 84–9–201. The trustee was entitled to, and did have, notice of plaintiff's security interest in the vehicles from the certificate of title on file. Plaintiff's security interest being thus perfected, plaintiff's interest in the vehicles is superior to the trustee's interest in them.

The Court finds from the security agreement that Heart was the seller; that Heart's representative had signed the security agreement; and no other party is designated in the contract who could be the seller.

 Since the security agreement was valid between Heart and the debtor, it was also valid as to creditors. The security agreement attached and became perfected when the plaintiff, who had been assigned all of Heart's rights in the contract, noted its lien on the certificates of title for the vehicles. Under the Kansas U.C.C. notice system of filing, this perfection was all the notice that the trustee, as a hypothetical lien creditor, was entitled to. Thus the security interest in the four vehicles was valid and perfected also against the trustee.

 Finally, the debtor has no interest in the vehicles, in light of the stipulation that debtor has no equity in the vehicles over and above plaintiff's claim.

Judgment should be for the plaintiff on its reclamation complaint. The trustee should be directed to surrender the four vehicles it has in its possession to the plaintiff.

THE FOREGOING SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.